NORTH CAROLINA LEAGUE OF MU-
NICIPALITIES, Administrator of the
Interlocal Risk Financing Fund of
North Carolina, and the Interlocal Risk
Financing Fund of North Carolina,
Plaintiffs,

v.

CLARENDON NATIONAL INSURANCE
COMPANY, a Connecticut corporation,
and Transamerica Reinsurance Compa-
ny, a Connecticut corporation, Defen-
dants.

No. 89–597–CIV–5–BO.

United States District Court,
E.D. North Carolina,
Raleigh Division.

April 2, 1990.

Wright T. Dixon, Jr., Alan J. Miles, Mary
Elizabeth Clarke, Bailey & Dixon, Raleigh,
N.C., for plaintiffs.

Peter M. Foley, LeBoeuf, Lamb, Leiby &
MacRae, Raleigh, N.C., for Clarendon Na-
tional Ins. Co.

J. Anthony Penry, Petree, Stockton &
Robinson, Raleigh, N.C., for Transamerica
Reinsurance Co.

## ORDER

TERRENCE WILLIAM BOYLE,
District Judge.

This matter comes before the court upon
the alternative motions of the defendant
Clarendon [1] to either dismiss this action or
to compel arbitration. For the reasons
stated below, the defendant's motion to
dismiss is denied and the motion to compel
arbitration is granted.

## FACTUAL BACKGROUND

Plaintiff, Interlocal Risk Financing Fund
of North Carolina ("IRFFNC"), is an agen-
cy created pursuant to statute in North
Carolina in order to provide units of local
government in North Carolina with a
shared risk pool and a self-insurance pro-
gram. Plaintiff, North Carolina League of
Municipalities ("NCLM"), is an unincorpo-
rated association of various units of local
government within North Carolina and is
the administrator of the IRFFNC.

---

1. The parties have filed a stipulation of dismis-
sal as to the defendant, Transamerica Reinsur-
ance Company. Accordingly, Clarendon re-
mains the sole defendant in this action.

In the early part of 1986, the plaintiffs undertook negotiations with defendant Clarendon for reinsurance coverage. O'Connor and Associates ("O'Connor"), an insurance broker acting as an intermediary between the parties, submitted a "placement slip" to Clarendon and a "cover note" to IRFFNC. A placement slip and a cover note provide an outline of the essential terms of reinsurance and act in the nature of an insurance binder, providing coverage during the pendency of negotiations between the reinsured and reinsurer.

The placement slip signed by IRFFNC, submitted by O'Connor, and accepted by Clarendon contained an arbitration clause [2] which provided in part that "... if any dispute shall arise between the Company and the Reinsurer with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute ... shall be submitted to three arbitrators ..." After the execution of the placement slips, the defendant submitted a proposed contract to IRFFNC, who executed it and returned it to the defendant. The defendant never executed this contract, and negotiations ensued over the contract provisions.

During the time in which these contract negotiations occurred, the plaintiffs paid premiums in the amount of $3,326,840.00 to the defendant. Contract negotiations over the final reinsurance coverage eventually broke down between the parties, and the plaintiffs brought suit in the Superior Court of Wake County, North Carolina to recover the premiums paid to the defendant. The plaintiffs allege that no contract was ever formed between the parties, and the defendant is relieved of any liability coverage for claims which arose during the interim coverage period. The defendants, on the other hand, claim that the placement slips operated as separate binding contracts between the parties, irrespective of the eventual negotiation breakdown on the final reinsurance contract.

The defendant removed this action to federal court and filed both a motion to dismiss and a motion to stay the court proceedings and compel arbitration.

## DISCUSSION

■ The Federal Arbitration Act, 9 U.S.C. § 1–14 (West 1970), is the starting point for this court's determination of the appropriateness of arbitration. Section 2 of the Act provides that an agreement to arbitrate in a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 4 in pertinent part provides that "the court shall hear the parties, and *upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue*, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement ..." (emphasis added).

As one court so cogently stated:

The role of the court under § 4 is strictly limited to answering one question: Is there a contract between these parties which commits the subject matter of this dispute to arbitration? If such an agreement exists, the court must compel arbitration, with adjudication on the merits of the underlying dispute left entirely to the arbitrator; if, on the other hand, the court determines that there is no agreement of the parties to arbitrate the dispute, then the petition must be denied.

*I.S. Joseph Co., Inc., v. Michigan Sugar Co.*, 803 F.2d 396, 399 (8th Cir.1986). In the case of *Prima Paint Corp. v. Flood &*

---

**2.** Plaintiffs make much of the fact that the placement slip only contained the words "Arbitration Clause" rather than the actual clause itself. However, the clause was typical of those used in the reinsurance industry at the time, and due to the abbreviated nature of the placement slip, the common industry practice was to use the words "Arbitration Clause" rather than the clause itself. In addition, the text of the clause appears in full in the proposed agreement executed on April 27, 1987 between the parties. In no way does the absence of the text in the placement slip suggest that the parties did not bargain for the clause's inclusion in the contract.

*Conklin,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court announced that arbitration clauses should be severed from the contracts which contain them.` As a result, a federal court must limit its determination to the validity of the arbitration clause in question, while the validity of the contract itself must be reserved for the arbitrator. *Id.* at 403–04, 87 S.Ct. at 1805–06. In *Sauer–Getriebe K.G. v. White Hydraulics, Inc.,* 715 F.2d 348 (7th Cir.1983), *cert. denied,* 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984), the Fifth Circuit applied this "severability" analysis.

> White argues that if there is no contract to buy and sell motors there is no agreement to arbitrate. The conclusion does not follow its premise. The agreement to arbitrate and the agreement to buy and sell motors are separate. Sauer's promise to arbitrate was given in exchange for White's promise to arbitrate and each promise was sufficient consideration for the other.

*Id.* at 350.

In applying the current law to the case at bar, this court finds that the parties made a valid contract to arbitrate, irrespective of their contract for reinsurance. O'Connor issued a cover note to the plaintiffs and a placement slip to the defendants which contained the words "arbitration clause," and both parties accepted the placement slips without reservation, thus indicating an intent to be bound by such a clause. Without even considering O'Connor's agency, both parties were offered and accepted the placement slips which contained the arbitration clause. This meeting of the minds may also be seen by extrinsic evidence, including the payment of premiums with the placement slips, plaintiff's filing of accident claims while negotiations were pending, and the failure by either party to modify the arbitration agreement in the proposed contract executed on April 27, 1987.

IRFFNC admits that the cover notes and placement slips contained an arbitration provision, that the April 27, 1987 contract proposal contained the full text of the arbitration clause, and that it executed that proposal. All of these factors indicate IRFFNC's intent to be bound by the arbitration agreement.

In making its ruling, the court notes that it is not determining the validity of the contract per se, only the validity of the agreement to arbitrate. There is ample evidence to support such a finding, and the court finds that the parties indeed contracted for an arbitration clause.

█ Having determined that the parties agreed to arbitrate the dispute in question, the court must look briefly at the subject matter of the dispute to determine its arbitrability. The Arbitration Act favors a liberal policy when determining the coverage of arbitration agreements, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and an arbitration agreement should be construed broadly to include coverage. *Id.* Since the arbitration clause in this case broadly states that any dispute arising between the parties shall be submitted to arbitration, this court finds that the subject matter of this dispute is covered within the agreement and therefore must be sent to arbitration.

Based upon the foregoing conclusions, the defendant's motion to dismiss is DENIED, and the defendant's motion to stay the court proceedings and compel arbitration is hereby GRANTED.

SO ORDERED.