**ACE CAPITAL RE OVERSEAS LTD., Plaintiff–Appellee,**

v.

**CENTRAL UNITED LIFE INSURANCE COMPANY, Defendant–Appellant.**

**Docket No. 01–9449.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 28, 2002.

Decided: Oct. 18, 2002.

26

Daniel Hargraves, Hargraves, McConnell & Costigan, P.C., New York, N.Y. (James D. McConnell, Jr., of counsel), for Defendant–Appellant.

William A. Maher, Wollmuth, Maher & Deutsch LLP, New York, N.Y. (Vincent T. Chang, Christopher H. Gardephe, on the brief), for Plaintiff–Appellee.

Before: WINTER, SOTOMAYOR, Circuit Judges, and KOELTL, District Judge.*

SOTOMAYOR, Circuit Judge.

This is an appeal from orders entered by the United States District Court for the Southern District of New York (Chin, J.) on November 13, 2001, granting the motion of plaintiff-appellee ACE Capital Re Overseas Ltd. ("ACE") to stay arbitration, *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, No. 01 Civ. 2238(DC), 2001 WL 1415080 (S.D.N.Y. Nov.13, 2001), and on November 28, 2001, denying the cross-motion of defendant-appellant Central United Life Insurance Co. ("CUL") to stay court proceedings and to compel arbitration.

The district court ruled that an arbitration clause incorporated in the parties' reinsurance agreement was not broad and that ACE's claim for rescission of the agreement based on fraudulent inducement was therefore not included within the scope of arbitration. We disagree, holding that under *Hartford Accident & Indemnity Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219 (2d Cir.2001), the clause at issue here, requiring arbitration "[a]s a condition precedent to any right of action hereunder, [of] any dispute [that] shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved," is a broad one that encompasses the parties' disputes regarding fraudulent inducement and contract termination. We reaffirm that this Court's decision in *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir.1961), concluding that the use of the phrase "arising under" results in a narrow arbitration clause, has been limited to its precise facts. We therefore vacate the district court's order denying arbitration and remand for an order compelling arbitration.

## BACKGROUND

### I. Facts

In December 1997, ACE, an insurance company registered under the laws of Bermuda, executed an initial agreement to reinsure a block of health insurance policies that CUL, a Texas stock life insurance company, had acquired from Commonwealth National Life Insurance Company ("Commonwealth"). On or about March 31, 1998, ACE and CUL formalized the

---

* The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

terms of this agreement by entering into a Retrocession Agreement (the "Agreement"), dated October 1, 1997, pursuant to which ACE undertook to reinsure a portion of the Commonwealth block of policies. The Agreement contains an arbitration clause that states, in pertinent part:

As a condition precedent to any right of action hereunder, if any dispute shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two arbitrators so chosen.

In addition to the Agreement, CUL and ACE signed a Stop Loss Reinsurance Agreement, also dated October 1, 1997, under which CUL ceded to ACE 100% of the net liability of CUL under the covered policies in excess of CUL's annual retention, namely, three million dollars. The Stop Loss Agreement contains an arbitration clause virtually identical to the one in the Agreement.

After the Agreement was executed, the Commonwealth block began to produce losses, and the parties entered into negotiations for a possible restructuring of their arrangement. On December 21, 1999, CUL's president signed a document entitled "Proposal to Enter Into Restructured Reinsurance Arrangements" (the "Proposal"). This document proposed to "amend and restructure the outstanding reinsurance agreements between [CUL] and [ACE]." The Proposal also stated that the parties would "mutually agree to terminate the Retrocession Agreement," effective January 1, 2000, and that the Stop Loss Reinsurance Agreement would be amended, effective as of the same date. The Proposal further provided that CUL and ACE would enter into a "New Reinsurance Agreement," likewise effective January 1, 2000, covering a new block of insurance policies. At no point did the Proposal mention arbitration, but it did state that, with certain exceptions, "[t]he terms of the New Reinsurance Agreement shall be substantially similar to the terms of the current Retrocession Agreement." The parties dispute, among other matters, whether the Proposal is a binding agreement or merely an agreement to agree.

## II. Proceedings Below

On March 16, 2001, ACE commenced this action seeking a declaration that the Proposal is a binding contract that terminates the Agreement. At approximately the same time, CUL served ACE with a demand for arbitration pursuant to the arbitration provision of the Agreement. ACE filed an amended complaint on June 29, 2001, alleging, among other things, that while CUL and ACE were negotiating the Agreement, CUL had sued Commonwealth for millions of dollars on the ground that the reserves for the Commonwealth block were inadequate, and that CUL had performed other acts that rendered fraudulent CUL's inducement of ACE to enter into the Agreement. Specifically, ACE argued that CUL's failure to disclose these facts to ACE constituted a basis for rescission of the Agreement on grounds of fraudulent concealment and material nondisclosure.

In its November 13, 2001 order, the district court found that "[w]hile the arbitration clause in this case is not narrow, it is also not 'a broad clause applicable to all claims under the agreement.'" *ACE Capital*, 2001 WL 1415080, at * 3. The court reasoned that the arbitration clause

provides for the arbitration of only two types of disputes: (1) those involving "interpretation" of the Agreement; and (2) those involving the parties' "rights with respect to any transaction" under the agreement. Because the language of the clause focuses on the interpretation of the agreement and the parties' rights with respect to "any transaction," a panoply of other potential disputes are excluded from coverage.

*Id.*

Addressing ACE's claim for rescission of the Agreement based on fraudulent inducement, the district court stated that "the Second Circuit [has] clarified that more limited arbitration clauses do not encompass disputes over fraudulent inducement of the underlying contract and are to be resolved by the courts." *Id.* at * 4. In support of this statement, the court cited *Michele Amoruso E Figli v. Fisheries Development Corp.*, 499 F.Supp. 1074 (S.D.N.Y.1980), and, parenthetically, *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961). *Id.* The court then went on to hold that "[i]n view of the limited scope of the arbitration clause here, the fraud claims are to be resolved by this Court, not the arbitrators." *Id.* Accordingly, the court granted ACE's motion to stay arbitration and denied CUL's cross-motion to stay court proceedings and to compel arbitration.

CUL appeals from the district court's orders entered on November 13 and November 28, 2001. CUL filed a timely notice of appeal in the district court on December 12, 2001. This Court has jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B), because this is an appeal from an order denying CUL's motion to compel arbitration under the Federal Arbitration Act ("FAA").[1] *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 225 (2d Cir. 2001).

## DISCUSSION

### I. Standard of Review and Applicable Law

A district court's denial of a motion to compel arbitration is reviewed *de novo*. *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir.1995).

The Second Circuit has established a two-part test for determining arbitrability of claims not involving federal statutes: (1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement. *Hartford Accident*, 246 F.3d at 226. A district court's determination of these issues is reviewed *de novo*. *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir.1998). Thus, whether ACE's claims of fraudulent inducement and contract termination fall

---

1. CUL claims on appeal that, technically, this dispute arises under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("CREFAA"), as enforced by Chapter Two of the FAA, 9 U.S.C. §§ 201 *et seq.*, because the parties are located in different countries—the United States (CUL) and Bermuda (ACE). The applicability of CREFAA is immaterial here. Neither party argues that CREFAA and the FAA diverge in any way relevant to this case. *Cf. Sphere Drake Ins. Ltd. v. Clarendon Nat'l. Ins. Co.*, 263 F.3d 26, 30 n. 2 (2d Cir.2001) ("While this case techni-

cally arises under the CREFAA, we may look to precedent discussing 9 U.S.C.A. § 4's requirement that the court be 'satisfied the making of the agreement for arbitration ... is not in issue' in interpreting the CREFAA's similar requirement that a court may compel arbitration 'unless it finds that the said agreement is null and void, inoperative or incapable of being performed.'" (*alteration in original*)). Moreover, the Agreement expressly provides that any arbitration "shall be governed by the Federal Arbitration Act."

within the scope of the Agreement's arbitration clause is a question that this Court addresses without deference to the district court.

The FAA, codified at 9 U.S.C. §§ 1–14, provides that written provisions to arbitrate controversies in any contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. "There is a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Hartford Accident,* 246 F.3d at 226. In accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration....."). Nevertheless, "[a]rbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

## II. Whether ACE's Fraudulent Inducement Claim Is Within the Scope of the Arbitration Clause

It is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) ("[I]f the

claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."). This is true because "arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and ... where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." *Id.* at 402, 87 S.Ct. 1801.

We recently explained *Prima Paint*'s doctrine of severability:

If a party alleges that a contract is void and provides some evidence in support, then the party need not specifically allege that the arbitration clause in that contract is void, and the party is entitled to a trial on the arbitrability issue pursuant to 9 U.S.C.A. § 4.... However, under the rule of *Prima Paint,* if a party merely alleges that a contract is voidable, then, for the party to receive a trial on the validity of the arbitration clause, the party must specifically allege that the arbitration clause is itself voidable.

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.,* 263 F.3d 26, 32 (2d Cir.2001). In the present case, ACE offers no evidence that the Agreement is void. Indeed, by consistently arguing that the Agreement should be rescinded on the basis of fraud, ACE has conceded that the Agreement is, at most, voidable. *See id.* at 31 ("A void contract is one that produces no legal obligation.... Unlike a void contract, a voidable contract is an agreement that '[u]nless rescinded ... imposes on the parties the

same obligations as if it were not voidable.'" (quoting Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 1:20, at 50 (4th ed.1990))). Moreover, ACE has never contended that CUL's alleged fraud was directed specifically to the arbitration clause, but instead has argued that the entire Agreement was fraudulently induced. Thus, ACE's claim of fraudulent inducement is not on its face precluded from arbitration.

The question that remains is whether the arbitration clause at issue is broad enough to encompass ACE's fraud claim. *See generally Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224–27 (2d Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 546, 151 L.Ed.2d 423 (2001). We conclude that the district court erred in ruling that the arbitration clause is not broad and that ACE's fraud claim is not arbitrable. The district court reached this result by ignoring more recent decisions of this Court that, taken together, compel the conclusion that the arbitration clause at issue is broad and by relying on distinguishable Second Circuit case law.

This Court in *Hartford Accident* addressed whether two differently worded arbitration clauses were broad enough to accommodate environmental pollution disputes that had arisen between an insurer and a reinsurer. 246 F.3d at 226–27. The first clause ("Clause I") read, in pertinent part: "[I]n the event of any difference arising between the contracting parties it shall be submitted to arbitration...." *Id.* at 223. The second clause ("Clause II") was very similar to the one at issue in the present case: "[I]f any dispute shall arise between [insurer] and [reinsurer] with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, ... such dispute, upon the written request of either party, shall be submitted to [arbitration]...." *Id.*

This Court concluded that both clauses had a "broad scope". *Id.* at 224.

The Court reasoned that, while Clause I was "unquestionably sufficiently broad" to encompass the disputed claims, Clause II also encompassed the disputes, even though it contained a measure of ambiguity in its phrasing. *Id.* at 226–27. Disagreeing with the district court's conclusion that Clause II limited the scope of arbitration to individual transactions, this Court offered the following analysis:

> The district court's one-sentence explanation that "the limitation of the arbitration to disputes particular to specific pending claims is made more explicit [in Clause II]" is unavailing. By "made more explicit," the district court must have read the phrase "with respect to any transaction" to modify both "the interpretation of this Agreement" and "their rights." This construction seems less natural than reading the prepositional phrase to modify only the phrase "their rights." Nevertheless, assuming both constructions to be reasonable, we are required to resolve this ambiguity in favor of arbitration.

*Id.* at 227 (internal citations omitted). In short, based on a "natural" reading and given the presumption in favor of arbitrability, the *Hartford Accident* Court read the phrase "rights with respect to any transaction involved" to constitute broad arbitration language. *Accord Quackenbush v. Allstate Ins. Co.*, 121 F.3d 1372, 1380 (9th Cir.1997) (finding the clause, "if any dispute shall arise between [Mission] and [Allstate] with reference to the interpretation of this Agreement or their rights with respect to any transaction involved ... such dispute shall be submitted to [arbitration]," to be "broad in scope, calling for arbitration of all contractual disputes" (alteration in original)).[2]

---

2. *See also Svedala Indus., Inc. v. Home Ins.* Co., 921 F.Supp. 576, 579–80 (E.D.Wis.1995)

The arbitration provision in the present case also contains the preamble, "As a condition precedent to any right of action hereunder." Relying heavily on this phrase, ACE argues that the word "hereunder" renders the arbitration clause distinguishable from *Hartford Acccident*'s Clause II because it limits the scope of the clause to disputes arising "under" the contract and therefore excludes disputes over fraudulent inducement or termination—issues that are arguably pre– and post–contract formation.

We are not persuaded. We begin by noting that *Hartford Accident*'s Clause II actually included a prefatory phrase nearly identical to the one in the present case.[3] In quoting and discussing Clause II, however, both this Court and the district court omitted any reference to the preamble.

*Hartford Accident,* 246 F.3d at 223; *Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.,* 87 F.Supp.2d 300, 302 (S.D.N.Y.2000).[4] Moreover, by its terms, the prefatory clause does not limit the scope of the arbitration clause but rather establishes a limitation on when a judicial action may be brought under the Agreement.

Even if the word "hereunder" in the preamble were relevant to the scope of the provision in the present case, we have not automatically construed as narrow arbitration clauses containing such phrases as "under the agreement" or "hereunder." In *S.A. Mineracao da Trindade–Samitri v. Utah International, Inc.,* 745 F.2d 190 (2d Cir.1984), for example, this Court considered the scope of an arbitration clause that read, in pertinent part: "Whenever

(noting that "the phrase 'any dispute ... with reference to ... [the parties'] rights with respect to any transaction involved' has been interpreted broadly" and holding that it encompasses a claim of insurer's bad faith (alterations in original)); *North River Ins. Co. v. Allstate Ins. Co.,* 866 F.Supp. 123, 127 (S.D.N.Y.1994) (construing as broad the clause: "If any dispute shall arise between the reinsured and the reinsurer with reference to the interpretation of this contract or their rights with respect to any transaction involved, the dispute shall be referred to three arbitrators"); *Costle v. Fremont Indem. Co.,* 839 F.Supp. 265, 273 (D.Vt.1993) (holding that "[t]he clear meaning of the language of this provision ["differences ... with reference to the interpretation of this Agreement or their rights with respect to any transaction involved"] is an agreement to arbitrate a broad range of disputes, namely, differences of interpretation of the contract or the rights of either party with respect to any transaction"); *North Carolina League of Municipalities v. Clarendon Nat'l Ins. Co.,* 733 F.Supp. 1009, 1010, 1011 (E.D.N.C.1990) (holding that the clause, "if any dispute shall arise between the Company and the Reinsurer with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement,

such dispute ... shall be submitted to three arbitrators," is one that "broadly states that any dispute arising between the parties shall be submitted to arbitration").

3. Clause II provided, in its entirety: "As a precedent to any right of action hereunder, if any dispute shall arise between the Company and the Reinsurer with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and the third by the two so chosen." Joint Appendix at 272, *Hartford Accident,* (00–7149(L), 00–7150(CON)).

4. In the course of extensive litigation, the *Hartford Accident* parties appear never to have quoted or referred to this phrase in their pleadings and briefs, but instead focused their arguments on the other wording of Clause II. We find it worthy of note, though not dispositive of the case before us, that two sophisticated insurers, locked in litigation for years over the scope of an arbitration clause, apparently did not regard the prefatory phrase, "As a precedent to any right of action hereunder," as affecting that scope.

any question or dispute shall arise or occur under this [Agreement/Contract], such question or dispute shall ... be finally settled by arbitration in Paris, France...." *Id.* at 192 (first alteration in original). Noting that "[u]nless excluded, claims of fraud in the inducement of a contract are arbitrable," this Court held that the clause "cover[ed][the] claims of fraudulent inducement" at issue. *Id.* at 195.[5]

The district court relied principally on *Michele Amoruso,* 499 F.Supp. at 1074 (citing *Kinoshita,* 287 F.2d at 951), in concluding that the arbitration clause at issue is "not 'a broad clause applicable to all claims under the agreement' " and that "a panoply of other potential disputes are excluded from coverage." *ACE Capital,* 2001 WL 1415080, at * 3. In *Michele Amoruso,* the district court held that an arbitration clause referring to disputes "arising out of this Agreement" was not broad, because it did not include any reference to disputes "relating to" the agreement.[6] 499 F.Supp. at 1080. *Michele Amoruso,* how-

ever, is inconsistent with this Court's decision in *Louis Dreyfus Negoce,* which held that the phrase "arising from," as opposed to "arising under," in an arbitration clause suggests a broad scope. 252 F.3d at 226–27.

*Michele Amoruso* is also suspect for the still more compelling reason that it relied in turn almost exclusively on *Kinoshita,* in which this Court held that the phrase "arise under [this agreement]" in an arbitration clause renders the clause a narrow one if unaccompanied by an expansive phrase such as "relating to." *Kinoshita,* 287 F.2d at 953. On the basis of this reasoning, the *Kinoshita* Court held that "where the clause restricts arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance, [f]raud in the inducement is not included." *Id.* The arbitration clause in this case is considerably different from the one in *Kinoshita.*[7]

More importantly, *Kinoshita,* which was decided before the Supreme Court's more recent decisions emphasizing the strong

---

**5.** Other courts in this Circuit have found clauses similar or nearly identical to the one at issue here to be broad or sufficiently broad in the circumstances. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Employers Reinsurance Corp.,* 919 F.Supp. 133, 134–35 (S.D.N.Y. 1996) (holding that the language "As a condition precedent to any right of action hereunder, any dispute arising out of this Agreement shall be submitted to the decision of a board of arbitration" encompassed the plaintiff's fraudulent inducement claims).

**6.** The clause at issue in *Michele Amoruso* read, in pertinent part: "[a]ny and all differences or disputes of whatever nature arising out of this Agreement shall be put to arbitration in the City of New York pursuant to ... the laws of the State of New York." 499 F.Supp. at 1078 (alterations in original).

**7.** The arbitration clause in *Kinoshita* read, in pertinent part: "If any dispute or difference should arise under this Charter, same to be

referred to three parties in the City of New York...." 287 F.2d at 952. The district court in the present case held that the clause at issue "provides for the arbitration of only two types of disputes: (1) those involving 'interpretation' of the Agreement; and (2) those involving the parties' 'rights with respect to any transaction' *under* the agreement." *ACE Capital,* 2001 WL 1415080, at * 3 (emphasis added). The court's use of the word "under" suggests that it found the reasoning of *Kinoshita* applicable here, but, as CUL rightly points out, there is no justification for the court's inserting the narrowing phrase "under the agreement" into, and omitting the less limiting word "involved" from, the phrase "any transaction involved." The district court also relied on *Certain Underwriters at Lloyd's London v. Colonial Penn Ins. Co.,* No. 97 Civ. 767(RPP), 1997 WL 316459 (S.D.N.Y. June 11, 1997), which involved arbitration language ("under this agreement") much closer to the precise facts of *Kinoshita* than the facts we confront today.

federal policy in favor of arbitration, has frequently been criticized in this Circuit,[8] and no decision of recent vintage mentions the case without confining it to its precise facts. *See, e.g., Louis Dreyfus Negoce,* 252 F.3d at 225 ("We have ... since limited [*Kinoshita* 's] holding to its facts, declaring that absent further limitation, only the precise language in *Kinoshita* ["arising under"] would evince a narrow clause."); *S.A. Mineracao,* 745 F.2d at 194 ("We decline to overrule *In re Kinoshita,* despite its inconsistency with federal policy favoring arbitration, particularly in international business disputes, because we are concerned that contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision. We see no reason, however, why we may not confine *Kinoshita* to its precise facts."); *St. Paul Fire & Marine Ins. Co. v. Employers Reinsurance Corp.,* 919 F.Supp. 133, 135 (S.D.N.Y.1996) ("As a result [of later Second Circuit cases], the authority of *Kinoshita* is highly questionable in this Circuit.").

*Kinoshita* appears to be the principal underpinning for the district court's conclusion that the arbitration clause here is not broad enough to encompass a claim of fraudulent inducement. But because *Kinoshita* must be confined to its "precise facts"—that is, to the phrase "arising under" or, at most, to "its equivalent," *S.A. Mineracao,* 745 F.2d at 194—the case has no application here.[9] The phrase "arising under" is simply too different, both verbally and functionally, from the prefatory phrase, "[a]s a condition precedent to any right of action hereunder," to warrant application of the strictly limited holding of *Kinoshita.*

■ In summary, *Hartford Accident* and other decisions within this Circuit show that the arbitration clause in the present case is a broad one that must be held to encompass a claim of fraudulent inducement of the contract in general. There is no controlling authority for ACE's contention that the prefatory phrase operates to limit the scope of arbitration.[10] The remainder of the clause— "if any dispute shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement"—uses the broad phrase "any dispute"; the general phrase "with respect to," *cf. Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir.1993) (stating that "[w]e find no substantive difference in the present context

---

**8.** Other circuits have questioned *Kinoshita* as well. *See, e.g., Battaglia v. McKendry,* 233 F.3d 720, 725 (3d Cir.2000) ("[The *Kinoshita* ] line of cases has been discredited both in the Second Circuit and in other jurisdictions."); *Gregory v. Electro–Mech. Corp.,* 83 F.3d 382, 385 (11th Cir.1996) (rejecting *Kinoshita* as "not being in accord with present day notions of arbitration as a viable alternative dispute resolution procedure").

**9.** *Louis Dreyfus Negoce* goes further than *S.A. Mineracao* to hold that *"only* the ... phrase ['arising under'] limits arbitration to a literal interpretation [of] performance of the contract." 252 F.3d at 226 (emphasis added).

**10.** In its post-argument letter brief dated September 9, 2002, at page 2, ACE's counsel cites and discusses a distinguishable case, *Gerling Global Reinsurance Co. v. ACE Property & Casualty Insurance Co.,* 42 Fed.Appx. 522 (2d Cir.2002), in violation of this Court's local rules, which expressly prohibit citation of summary orders.2d Cir. R. § 0.23 ("Where disposition is by summary order, the court may append a brief written statement to that order. Since these statements do not constitute formal opinions of the court and are unreported or not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court."). Counsel is advised to comply with our local rules in future briefing.

between the phrases 'relating to,' 'in connection with' or 'arising from,'" and holding that such language did not limit the scope of arbitration and forum selection clauses to allegations of contractual violations); the broad, open-ended phrase "any transaction involved"; and the temporally non-limiting phrase, "whether such dispute arises before or after termination of this Agreement." The clause adds that the disputes "with reference to the interpretation of this Agreement" are also subject to arbitration. Thus, both this Circuit's case law and the plain meaning of the arbitration clause suggest that the clause should be construed as broad in scope. To the extent, if any, that the prefatory phrase introduces a degree of ambiguity into the provision, such ambiguity must be resolved in favor of arbitration. *See Hartford Accident*, 246 F.3d at 227. In interpreting the clause as it did and in denying arbitration of ACE's fraud claim, the district court committed legal error.

### III. Whether ACE's Contract Termination Claim Is Arbitrable

The district court, while noting that ACE and CUL dispute the validity of the Proposal and its purported termination of the Agreement, did not address whether ACE's termination claim is subject to the arbitration clause in the Agreement. *ACE Capital*, 2001 WL 1415080, at * 1. ACE argues that claims relating to the Proposal cannot be arbitrated, because (1) the Proposal does not expressly provide for arbitration, and (2) the arbitration clause in the Agreement, which the district court found to be "not ... broad," cannot encompass a dispute relating to the Proposal—a separate, collateral document.

 It is true that "[w]here the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Louis Dreyfus Negoce*, 252

F.3d at 224. But we have already concluded that the arbitration clause in this case is a broad one. With that determination, "'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" *Id.* (quoting *Collins & Aikman*, 58 F.3d at 23). Moreover, "[w]hen parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated, while the intended scope of a narrow arbitration clause is obviously more limited." *Id.* at 225 (internal citation omitted); *cf. Rochdale Vill., Inc. v. Pub. Serv. Employees Union, Local No. 80*, 605 F.2d 1290, 1295 (2d Cir.1979) ("If a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' all questions, including those regarding termination, will be properly consigned to the arbitrator. . . .").

 Given the presumption of arbitrability created by the broad arbitration clause here, we conclude that issues presented by the Proposal—for example, whether the Proposal terminates, modifies, or otherwise affects the Agreement, and whether it incorporates any of the terms of the Agreement—" 'touch matters' within the main agreement to be arbitrated. . . ." *Louis Dreyfus Negoce*, 252 F.3d at 225. Moreover, the "claim alleged"—termination or modification of the Agreement— "implicates issues of contract construction or the parties' rights and obligations under [the Agreement]." *Id.* at 224 (quoting *Collins & Aikman*, 58 F.3d at 23). This conclusion is especially compelled because the arbitration clause at issue expressly contemplates arbitration of "any dispute ... between the parties hereto with refer-

ence to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of this Agreement." Here, we have a dispute over the parties' "rights with respect to [a] transaction involved"—the Proposal purportedly intended to affect the parties' rights and duties under the Agreement—that allegedly arose "after termination of this Agreement," and that also concerns "interpretation of this Agreement," to the extent that the Agreement contains clauses specifically relating to the required manner of termination or modification of the Agreement. For example, the Agreement provides that "[t]his Agreement may not be altered or changed except by a writing executed by the Ceding Company and the Assuming Company." Whether these and other requirements of the Agreement were properly complied with in the Proposal will require interpretation of the Agreement-a matter specifically commended to arbitration by the clause here.[11]

▮ The cases cited by ACE concerning collateral matters or documents, most of which involve collective bargaining agreements ("CBAs"), are not to the contrary. In *Rochdale*, for example, this Court found that a "slightly" narrow arbitration clause, containing the "limiting" phrase "any and all disputes hereunder," 605 F.2d at 1296, would not encompass issues relating to a separate document purporting to terminate the CBA:

> If there was such an agreement it was collateral to the collective bargaining agreement. The latter agreement made no provision for alteration of the duration provision. The collective bargain-

ing agreement was silent on the subject of any amendments to its terms; it contained nothing prohibiting or restricting amendment or requiring amendments to be in writing. Thus questions as to whether the parties entered into a side agreement or as to what the terms of such a side agreement were, do not arise "under" the collective bargaining agreement. This issue was therefore beyond the scope of the arbitration clause and should have been determined by the court.

*Id.* at 1297; *see also Peerless Imps., Inc. v. Wine, Liquor & Distillery Workers Union Local One*, 903 F.2d 924, 929 (2d Cir.1990) (same); *In re Prudential Lines, Inc.*, 704 F.2d 59, 64 (2d Cir.1983) (same). The reasoning of *Rochdale*—upon which ACE relies heavily—is inapplicable to the present case for two reasons: (1) the arbitration clause here is a broad provision not limited by "arising under" language, and so requires arbitration of a collateral agreement proposing to terminate or amend the Agreement; and (2) the Agreement contains provisions for termination and amendment, which the arbitration clause therefore requires to be interpreted in connection with a document purporting to affect those terms. Moreover, "[t]he burden is on the party resisting arbitration to demonstrate that the disputed issue is collateral." *Prudential Lines*, 704 F.2d at 64. Given the foregoing analysis, ACE has not carried that burden. We conclude that the dispute over the validity of the Proposal, and its impact on the rights and duties of the parties under the Agreement, touches matters that fall within the scope of the arbitration clause in this case and therefore must be arbitrated.

---

**11.** CUL argues that the Proposal contains language that incorporates by reference the Agreement's arbitration clause: "The terms of the New Reinsurance Agreement [or Proposal] shall be substantially similar to the terms

of the Current Retrocession Agreement...." This language, too, may well require interpretation of various terms of the original Agreement to determine which terms, if any, were intended to be incorporated in the Proposal.

## CONCLUSION

For the foregoing reasons, we vacate the orders of the district court granting ACE's motion to stay arbitration and denying CUL's cross-motion and remand with instructions to grant CUL's motion to compel arbitration.