**BRISTOL–MYERS SQUIBB COMPANY, Plaintiff,**

v.

**SR INTERNATIONAL BUSINESS INSURANCE COMPANY LTD., Defendant.**

**No. 04 Civ.5754(LAK).**

United States District Court, S.D. New York.

Feb. 7, 2005.

Louis M. Solomon, Hal S. Shaftel, Emily Stern, Proskauer Rose LLP, New York City, for Plaintiff.

Jennifer L. Conn, Steven E. Sletten, Joel M. Athey, Gibson, Dunn & Crutcher LLP, New York City, for Defendant.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Thirty-seven years ago, the late Judge Kaufman wrote:

> "Arbitration is often thought of as a quick and efficient method for determining controversies. Unfortunately, cases involving arbitration clauses sometimes are best remembered as monuments to delay because of the litigation and appeals antecedent to the actual arbitration." [1]

This may be remembered as such a case. The defendant wants a dispute over its right to rescind or avoid insurance policies that it issued to the plaintiff to be resolved by arbitration in England. The plaintiff prefers litigation in the United States. The major question before the Court is one that has troubled the Second Circuit for decades: whether an arbitration clause that applies to "any dispute arising under" a contract extends to a claim of fraudulent inducement.

*Facts*

### A. The Insurance Policies

This case concerns two insurance policies issued by SRI International Business Insurance Company Ltd. ("SRI"), a United Kingdom company, to Bristol–Myers Squibb Company ("BMS"), a Delaware corporation with its principal place of business in New York.[2] The policies are referred to collectively as the Casualty XL Policies.[3] Each was extended to July 1,

---

1. *Standard Chlorine of Delaware, Inc. v. Leonard*, 384 F.2d 304, 305 (2d Cir.1967).

2. Am. Cpt. ¶¶ 1, 2, 4–11.

3. The policies in question are Nos. 509/DL183596 and 509/DL211697. Am. Cpt. ¶ 4; Conn Decl. Exs. B, C.

2004,[4] allegedly because BMS insisted on their extension as a condition for its purchase of a separate group of policies referred to collectively as the Millennium Policy.[5] The extended terms are referred to as the 2001–2004 XL Policies.

The Casualty XL Policies contained an arbitration clause that provided in pertinent part:

> "Any dispute arising under this Policy shall be finally and fully determined in London, England under the provisions of the English Arbitration Act of 1950, as amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows:
>
> "Any party to the dispute may, once a claim or demand on his part has been denied or remains unsatisfied for a period of twenty (20) calendar days by any other, notify the others of its desire to arbitrate the matter in dispute...."[6]

The policies contained also a choice-of-law clause that provided in pertinent part: "This Policy shall be governed by and construed in accordance with the internal laws of the State of New York...."[7]

*B. SRI's Challenge to the Casualty XL Policies*

On June 11, 2004, SRI's counsel sent BMS a letter stating:

> "SRI is entitled to avoid and/or to rescind the 2001–2004 XL Policies and hereby gives notification that it does so and further of its intent to demand arbitration with respect to these issues if BMS disputes the position of SRI as to the invalidity and unenforceability of the 2001–2004 XL Policies. SRI hereby tenders to BMS a return of all premiums paid for the 2001–2004 XL Policies...."[8]

The letter stated that SRI's basis for avoiding the policies was "the same material misrepresentations and/or material non-disclosures" set forth in an earlier letter seeking avoidance of the Millennium Policy and in documents that SRI filed in an arbitration in England relating to the Millennium Policy.[9] Those documents asserted that BMS, among other things, manipulated publicly reported financial results from 1997 to 2001 and that those misrepresentations induced SRI to enter into the insurance contracts.[10]

The June 11 letter stated as additional grounds for rescission and avoidance (1) that "BMS and SRI agreed to the 2001–2004 XL Policies based on a fundamental mutual or unilateral mistake concerning the validity and enforceability of the Millennium Insurance Policy," (2) that there was a failure of consideration in that the Millennium Insurance Policy was not valid and enforceable, and (3) that:

> "BMS misled SRI into believing through its misrepresentations and non-disclosures that the Millennium Insurance Policy would be valid, enforceable, and binding.... This in fact was false, and BMS either knew or reasonably should

---

4. Solomon Decl. Exs. B (Endorsement No. 13), C (Endorsement No. 11).

5. *See* Conn Decl. Ex. N at 2; Def. Br. 6–7.

6. Conn Decl. Ex. B at 24; Ex. C at 24.

7. Conn Decl. Ex. B at 26; Ex. C at 25.

8. Conn Decl. Ex. N at 3.

9. *Id.*

The Millennium Policy contained a different arbitration clause. *See* Solomon Decl. Ex. D at 8 ("Any dispute, controversy or claim arising out of or relating to this Agreement or to the breach, cancellation, termination or invalidity of this Agreement shall be" arbitrated). So far as the Court is aware, BMS did not challenge the arbitrability of SRI's attempt to avoid that policy.

10. Solomon Decl. Ex. G; Conn Decl. Exs. L, M.

have known of its falsity. BMS intended SRI to rely upon said misrepresentations and non-disclosures, and SRI did so rely." [11]

On July 23, 2004 SRI's counsel sent BMS a further letter stating in pertinent part:

"We do not have any response from you ... regarding the substance of our June 11, 2004 letter in which we set forth a summary of the reasons and bases for the decision made by SRI to avoid and rescind the 2001–2004 XL Policies. Under the circumstances, we conclude from your silence that you do not accept SRI's position in that regard. There are, therefore, disputes arising under the 2001–2004 XL Policies ... which are subject to the provisions of the English Arbitration Act of 1950 ... pursuant to ... the 2001–2004 XL Policies.

"In excess of twenty (20) days have now passed since our demand that you accept SRI's avoidance and/or rescission of the 2001–2004 Policies. Accordingly, pursuant to the Arbitration Clause, we hereby notify you of SRI's desire to arbitrate the Disputes." [12]

## C. The Present Action

BMS here asserts two claims for declaratory relief. The first seeks "a declaration that no grounds exist to rescind or avoid the [Casualty XL] Policies and that the [Casualty XL] Policies are and shall remain in full force and effect." [13] The second seeks "a declaration that any claim of rescission or avoidance in respect of the [Casualty XL] Policies is not subject to arbitration." [14] The complaint requests also an order enjoining SRI from initiating, and staying, arbitration relating to avoiding and rescinding the Casualty XL Policies.[15]

The matter now is before the Court on SRI's motion to dismiss the complaint and compel arbitration and BMS's motion for summary judgment on its second claim.

### Discussion

## A. Arbitrability of the Underlying Dispute

■ BMS's motion for partial summary judgment and SRI's motion to dismiss and to compel arbitration require the Court to decide whether SRI's claim for rescission of the 2001–2004 XL Policies is arbitrable.

As an initial matter, the parties agree that this question is governed by federal law. The arbitration provision in the Casualty XL Policies is subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and therefore to the Federal Arbitration Act (the "FAA"),[16] which creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." [17]

---

11. Conn Decl. Ex. N at 4–5.

12. Conn Decl. Ex. O.

13. Am. Cpt. at 5.

14. *Id.*

15. *Id.*

16. The Convention is enforced in U.S. courts through chapter 2 of the FAA, 9 U.S.C. §§ 201–08. Section 202 provides that an ar-

bitration agreement falls under the Convention unless it is "entirely between citizens of the United States." Section 208 incorporates chapter 1 of the FAA, codified at 9 U.S.C. §§ 1–16, to the extent that it is not in conflict with the Convention.

17. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); accord *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *New York v. Oneida Indian Nation*, 90 F.3d 58, 61 (2d Cir.1996).

### 1. Scope of the Arbitration Clause

■ Parties may be required to arbitrate only when they have agreed to do so.[18] An arbitration clause is severable from the rest of a contract, so that it will be enforced unless there is a claim that the arbitration clause itself is voidable.[19] There is an "emphatic federal policy in favor of arbitral dispute resolution,"[20] and it "applies with special force in the field of international commerce."[21] Doubts about the scope of an arbitration clause therefore are to be resolved in favor of arbitration.[22]

The Second Circuit has adopted an analytic framework for determining whether a dispute falls within the scope of an arbitration clause:

> "First, ... a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause.

Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.' "[23]

In this case, however, this Court may not perform this analysis on a blank slate. Certain Second Circuit decisions have passed on the treatment of facts indistinguishable from those at issue here, and this case is controlled by those precedents.

The story begins in 1961, with In re Kinoshita,[24] which concerned a maritime contract under which a Japanese corporation was to charter a vessel from an American corporation. The contract contained the following arbitration clause: "If any dispute or difference should arise under this Charter, same to be referred to" arbitration.[25] The American corporation did

---

18. *See, e.g., First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

19. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 29–30 (2d Cir.2002); *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32 (2d Cir.2001).
There is of course no such claim here. This case is nevertheless anomalous in that the party insisting on arbitration is the same party claiming that the contract containing the arbitration clause was fraudulently induced. The reverse pattern is by far more common.

20. *Mitsubishi Motors Corp.*, 473 U.S. at 631, 105 S.Ct. 3346; *accord Mastrobuono*, 514 U.S. at 56, 115 S.Ct. 1212; *Southland Corp. v.*

*Keating*, 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S.Ct. 927.

21. *Mitsubishi Motors Corp.*, 473 U.S. at 631, 105 S.Ct. 3346; *accord Smoothline Ltd. v. N. Am. Foreign Trading Corp.*, 249 F.3d 147, 153 (2d Cir.2001).

22. *E.g., Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. 3346; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25, 103 S.Ct. 927; *Sphere Drake Ins. Ltd.*, 263 F.3d at 30.

23. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001) (citations omitted); *accord JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 172 (2d Cir.2004); *ACE Capital Re Overseas Ltd.*, 307 F.3d at 34.

24. 287 F.2d 951 (2d Cir.1961).

25. *Id.* at 952.

not tender the vessel at the agreed-upon time and place. The charterer demanded arbitration, which the American owner resisted.

The Second Circuit was not favorably disposed toward the American corporation's attempt to avoid arbitration. It paused to address only the American corporation's argument that the arbitration clause did not apply to its claim that the contract had been fraudulently induced given that the Japanese corporation had not revealed that it was a foreign corporation and that it was not authorized to do business in New York. On its way to dismissing the fraud claim on the merits as frivolous, the Circuit agreed with the American corporation's interpretation of the arbitration clause:

> "[V]iews more favorable to arbitration appear to be making headway. But where the clause restricts arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance, [f]raud in the inducement is not included. The agreement to arbitrate is limited to such matters as those just enumerated when it refers to dispute or controversies 'under' or 'arising out of' the contract." [26]

The Second Circuit has revisited this holding repeatedly, and it repeatedly has sailed just clear of overruling it. In 1984, the Circuit confronted a clause that provided: "Whenever any question or dispute shall arise or occur under this [Agreement/Contract], such question or dispute shall ... be finally settled by arbitration...." [27] The Court "confine[d] *Kinoshita* to its precise facts" [28] and held, over Judge Kearse's dissent, that the language distinguishing this clause from the clause at issue in *Kinoshita*—the inclusion of the words "question" in addition to "dispute" and "occur" in addition to "arise"—made this one broad enough to encompass a claim of fraudulent inducement. [29]

Similarly, in 1987, the Second Circuit held that a clause that referred to "[a]ll claims and disputes of whatever nature arising under this contract" applied to claims of fraudulent inducement. [30] The Court again declined to overrule *Kinoshita*. It distinguished the case on the basis that the inclusion of the phrase " 'of whatever nature' indicates the parties' intent to submit all claims and disputes arising under the contract to arbitration, whether they be tortious or contractual in nature." [31]

In 2001, the Second Circuit continued this pattern with its interpretation of a clause limiting arbitration to disputes "arising from the making, performance or termination" of a charter. [32] The Court noted that *Kinoshita* has been limited to its facts ("absent further limitation, only the precise language in *Kinoshita* would evince a narrow clause" [33]) and held that "[t]o the extent a distinction exists between the present language of 'arising from' and *Kinoshita*'s language of 'arising

26. *Id.* at 953.

27. *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 192 (2d Cir. 1984).

28. *Id.* at 194.

29. *Id.*

30. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir.1987).

31. *Id.* at 854.

32. *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir.2001).

33. *Id.* at 225.

under,' we believe the distinction is more than just a semantic one, and only the latter phrase limits arbitration to a literal interpretation or performance of the contract." [34]

The most recent decision to treat this issue is *ACE Capital Re Overseas Ltd. v. Central United Life Insurance Co.*[35] The arbitration clause there at issue provided that "[a]s a condition precedent to any right of action hereunder, if any dispute shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved ... such dispute ... shall be submitted to" arbitration.[36] The Circuit, in holding that this clause too was broad enough to encompass a claim of fraudulent inducement, reflected on *Kinoshita'*s viability:

> "*Kinoshita* ... was decided before the Supreme Court's more recent decisions emphasizing the strong federal policy in favor of arbitration, ... and no decision of recent vintage mentions the case without confining it to its precise facts.... *Kinoshita* must be confined to its 'precise facts'—that is, to the phrase 'arising under' or, at most, to 'its equivalent'...." [37]

Our Circuit thus repeatedly has limited *Kinoshita* to its precise facts, eroding the case into a tiny island of non-arbitrability in a vast arbitral ocean. Here, however, it appears to be impossible to distinguish *Kinoshita*, as the operative language of the clause at issue here is substantially identical to that in the *Kinoshita* clause:

| *Kinoshita* Clause | Clause in the Casualty XL Policies |
| --- | --- |
| "any dispute or difference [that] should arise under this Charter" | "[a]ny dispute arising under this Policy" |

SRI nevertheless labors to do so.

**2. SRI's Attempts to Distinguish Kinoshita**

The centerpiece of this effort is the argument that the alleged misrepresentations at issue here occurred while the Casualty XL Policies were in effect whereas those at issue in *Kinoshita* occurred prior to the existence of any contractual relationship. SRI therefore contends the alleged misrepresentations "arose under" [38] the Casualty XL Policies. But this argument fails.

SRI's underlying claim is that the policies *as extended* are avoidable because the *agreement to extend* was induced by fraud. Indeed, SRI described the 2001–2004 XL Policies in the June 11 letter as "successor policies to a pre-existing ... insurance coverage program." [39] That the extensions were in the form of amendments rather than entirely new policy documents is immaterial under *Kinoshita*. The point— one seemingly recognized by SRI's demand letters to BMS—is that the alleged misrepresentations occurred prior to the particular contract, namely, the agreement to extend, that SRI is seeking to avoid. Furthermore, the arbitration clause refers to "any dispute arising under" the policies, not, as SRI's reply brief seemingly would have it, to "any dispute concerning any conduct that occurred during" the policies. That the alleged misrepresentations occurred during the original terms of the Casualty XL Policies does not rescue SRI from *Kinoshita.*

SRI's other proposed ground for distinguishing this case from *Kinoshita* is that SRI's allegations "raise questions about BMS's failure to perform its contractual obligations" [40] because BMS was obligated

---

**34.** *Id.* at 226.

**35.** 307 F.3d 24 (2d Cir.2002).

**36.** *Id.* at 27.

**37.** *Id.* at 32–33 (citations omitted).

**38.** Def. Reply Br. 5, 10.

**39.** Conn Decl. Ex. N at 1.

**40.** Def. Reply Br. 11.

under the Casualty XL Policies to provide accurate financial information so SRI could make the appropriate premium adjustments. The short answer to this contention is that SRI's claim in its demand for arbitration was not for breach of the Casualty XL Policies, but for rescission based upon an allegation that BMS misled SRI into entering into them.

As SRI's purported distinctions of *Kinoshita* are unpersuasive, this case has come to rest on the tiny island in the vast ocean.

### 3. SRI's Non–Fraud Claims

 SRI argues that its other grounds for rescinding the 2001–2004 XL Policies—namely failure of consideration and mistake—fall within the scope of the arbitration clause and distinguish this case from *Kinoshita*, even if the fraudulent inducement claim does not. The Court is not convinced. "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted." [41] Here of course SRI has filed no complaint. Insofar as the June 11 letter sets forth SRI's theories of failure of consideration and mistake, however, those claims appear to be different labels for what in substance is the same claim that SRI has elsewhere described as fraudulent inducement: namely, that the 2001–2004 XL Policies are avoidable because BMS misled SRI into the extensions. These additional theories, then, do not independently bring the underlying dispute within the scope of the arbitration agreement.

Furthermore, this conclusion is in accord with *Kinoshita*. The theories of failure of consideration and mistake go not to "the interpretation of the contract and matters of performance" [42] but to the formation and validity of the agreement. From the standpoint of *Kinoshita*, they are indistinguishable from the fraudulent inducement theory.

### B. The Claims for Declaratory Judgment

 As noted, the complaint seeks declarations that no grounds exist to rescind or avoid the policies and that SRI's claim for such relief is not arbitrable.

 The declaratory judgment is a remedy the availability of which is committed to the discretion of the district court. [43] It need not be granted unless (1) "the judgment will serve a useful purpose in clarifying and settling the legal relations in issue," or (2) "it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." [44]

Here, the issue of arbitrability has been determined in the context of passing on SRI's motion to compel arbitration. The second claim for relief in the complaint, which seeks a declaratory judgment on that point, therefore is unnecessary.

### Conclusion

The holding in *Kinoshita* is out of step with the overwhelming body of law favoring arbitration in circumstances like these. Although the Second Circuit's oft-repeated limitation of the case to its precise facts evidences its awareness of this fact, its

**41.** *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir.1987); *accord Specht v. Netscape Communications Corp.*, 306 F.3d 17, 36 (2d Cir.2002).

**42.** *Kinoshita*, 287 F.2d at 953.

**43.** *E.g., Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

**44.** *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir.1992); *accord Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir.2003).

equally frequent refusals to overrule the case leave this Court no discretion in the matter. If this Court cannot legitimately distinguish the case, it is obliged to apply it, regardless of the view it might take if the matter were presented afresh. For the reasons previously expressed, this Court cannot honestly distinguish *Kinoshita*.

Accordingly, the defendant's motion to dismiss and to compel arbitration [docket item 7] is denied. The plaintiff's claim for a declaration that SRI's claim for rescission or avoidance is not subject to arbitration and for a stay of arbitration is dismissed in the exercise of discretion, as there is no need for such relief in view of the denial of SRI's motion to compel arbitration. The plaintiff's motion for partial summary judgment [docket item 13] is denied as moot.

SO ORDERED.