CHINA AUTO CARE, LLC,
et al., Plaintiffs,

v.

CHINA AUTO CARE (CAYMANS),
et al., Defendants.

No. 11 Civ. 8064(VM).

United States District Court,
S.D. New York.

May 4, 2012.

Lawrence Figowe Morrison, The Morrison Law Offices, P.C., New York, NY, for Plaintiffs.

Benjamin M. Zuffranieri, Jr., Robert J. Fluskey, Jr., Hodgson, Russ, LLP, Buffalo, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

In this action, plaintiffs China Auto Care, LLC ("CAC LLC") and China Auto Care Holdings, LLC ("CAC Holdings," together with CAC LLC, "Plaintiffs"), which are the parent companies of defendants China Auto Care (Caymans) ("CAC Caymans") and, in turn, Digisec Corporation ("Digisec"), assert various causes of action arising from the June 2011 sale of Digisec's assets to non-party Trimble LTD ("Trimble"). Plaintiffs filed their original complaint (the "Original Complaint") in New York State Court, New York County on October 4, 2011.

On November 9, 2011, this matter was removed to this Court by defendants CAC Caymans, Digisec, the estate of Chander Oberoi ("Oberoi," collectively with CAC Caymans and Digisec, "Defendants"), Benjamin Dubin ("Dubin"), and James DiSanto ("DiSanto").[1]

On November 16, 2011, Defendants moved to dismiss the Original Complaint, arguing that this Court lacks personal jurisdiction, that Plaintiffs failed to effect service, and that the complaint failed to state a claim. (See Docket Nos. 7–12.) Defendants also argued that this case should be dismissed or stayed in light of an arbitration clause (the "Arbitration Clause") contained in the "Business Relationship and Shareholder Agreement," which governs equity interests in CAC Caymans (the "Shareholder Agreement"). Defendants' motion to dismiss was fully briefed as of December 30, 2011. (See Docket No. 15.) However, on January 6, 2012, Plaintiffs filed both a motion to amend the complaint and an amended complaint (the "Amended Complaint"). (Docket Nos. 21, 23.)

The Court held a teleconference on January 19, 2012 to discuss the parties' positions regarding the Amended Complaint.

1. On November 16, 2011, Plaintiffs voluntarily dismissed this case as to defendants Dubin and DiSanto. (See Docket No. 5.)

Because Defendants' argument as to the applicability of the Arbitration Clause continues to present a threshold issue as to the Amended Complaint, the Court ordered the parties to submit letter briefs on that discrete question. The parties submitted those letter briefs (Docket Nos. 24, 25) and the Court deems Defendants' letter brief a motion to dismiss the Amended Complaint and to compel arbitration.

By Order dated April 27, 2012 (Docket No. 26), the Court preliminarily granted Defendants' motion. The Court now sets forth its findings, reasoning, and conclusions in support of that Order granting Defendants' motion, staying this action, and compelling arbitration.

## I. BACKGROUND [2]

A full adjudication of the substantive dispute between the parties would require an examination of the rights and obligations as between the parent entities— Plaintiffs—and their corporate children and grandchildren—CAC Caymans and Digisec. Because the threshold arbitrability inquiry now before the Court turns upon the applicability of the Arbitration Clause to the substance of that underlying dispute, a brief review of the relevant corporate relationships is warranted.

CAC LLC is a Delaware limited liability corporation and owns a majority of the outstanding shares of CAC Caymans. CAC Caymans, a Cayman Islands corporation, owns percent of the outstanding shares of Digisec, which is also incorporated in the Cayman Islands. Digisec, in turn, is the parent company of Yamei Electronics Co., Ltd. ("Yamei"), a Chinese entity founded by Oberoi. Oberoi was a director of both CAC Caymans and Digisec, and, along with his associates or family members, owns those outstanding shares of CAC Caymans not controlled by CAC LLC. The relationship among the shareholders of CAC Caymans—including CAC LLC, Oberoi and the individuals affiliated with Oberoi—is set forth in the Shareholder Agreement, which specifically addresses the ownership structure of the corporate family described in this paragraph. (See Shareholder Agreement, at 1 (Docket No. 1, Ex. 4).)

The discord within this corporate family began in early 2011, when Oberoi launched a failed effort to purchase CAC LLC's interest in CAC Caymans for $3 million. Shortly thereafter, in June 2011, Digisec sold substantially all of its assets—consisting of its Oberoi-founded subsidiary Yamei—to Trimble for $17 million, with a $3 million dollar earn-out provision. Digisec neither informed Plaintiffs of the transaction with Trimble nor distributed to Plaintiffs a pro rata share of proceeds from any sale to Trimble. Plaintiffs allege that Defendants withheld information regarding the then-pending Trimble transaction in an effort to artificially suppress the price that Plaintiffs would accept from Oberoi in the failed CAC Caymans stock-purchase transaction, which was negotiated during the same period as the Trimble transaction.

Plaintiffs initiated this action in an effort to prohibit Digisec from transferring or

---

**2.** The facts discussed herein are drawn from the pleadings in this case and the exhibits attached thereto. Except where specifically quoted, no further reference to these documents will be made. Because the issue presented here is the applicability of an arbitration clause, where necessary, the Court accepts as true the allegations of Defendants. See Collins & Aikman Prods. Co. v. Building Sys. Inc., 58 F.3d 16, 19 (2d Cir. 1995) (citing Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 846 (2d Cir.1987) for the proposition that "in deciding arbitrability, court is to look to allegations of party demanding arbitration and—if they fall within the scope of the parties' agreement— court should compel arbitration, no matter how frivolous allegations appear to be").

disposing of any proceeds of the Trimble transaction. In their Amended Complaint, Plaintiffs restated their causes of action to not only specifically request a temporary restraining order, but also to request an accounting, and to allege violations of Cayman Islands Companies Laws, unjust enrichment and conversion. Defendants assert that the Court need not reach the substance of Plaintiffs' causes of action, because each-regardless of how titled-relates to the corporate relationship governed by the Shareholder Agreement; thus, the Arbitration Clause applies and this dispute must be arbitrated.

## II. *LEGAL ANALYSIS*

■ The Federal Arbitration Act ("FAA") governs whether the Court must compel arbitration. *See* 9 U.S.C. § 2 ("A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...."). "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, 'according to their terms,'" *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.1999) (*quoting Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)). Well-established federal public policy strongly favors arbitration as an "alternative means of dispute resolution." *Chelsea Square Textiles*, 189 F.3d at 294 (describing FAA as evincing "a strong federal policy favoring arbitration" (quotation marks omitted)); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987) (describing FAA as "a Congressional declaration of a liberal federal policy favoring arbitration agreements" (*quoting Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quotation marks omitted))). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the United States Court of Appeals for the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir.2006) (quotation marks omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir.1995) (quotation marks omitted).

■ However, as a general principle, no party may be required to submit to arbitration any dispute that it has not agreed to arbitrate. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996) (*quoting AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir.2002).

■ To determine whether to compel arbitration, the Court must consider four questions: (1) whether the parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of that agreement; (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable;[3] and (4) if only some of the claims asserted are arbitrable, a court must determine whether to stay the litigation of non-arbitrable claims. *See Genesco*, 815 F.2d at 844. The parties concur that the Arbitration Clause constitutes an agreement to arbitrate some universe of disputes among them; however,

---

**3.** Since there are no federal statutory claims at issue, this third consideration is inapplicable to this case.

Plaintiffs maintain that the claims advanced in the Amended Complaint fall outside the scope of the Arbitration Clause.

■ The Second Circuit has prescribed a two-step inquiry to determine whether a dispute falls within a particular arbitration clause:

> First, ... a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause," or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, "there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it."

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001) (citations omitted). The Second Circuit has "held that 'the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said *with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute.*'" *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir.1998) (*quoting WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir.1997) (emphasis and alteration in original)).

## A. THE ARBITRATION CLAUSE IS BROAD

In the Second Circuit, the class of arbitration clauses considered "narrow," is, functionally, a class of one. In a 1961 decision. *In re Kinoshita*, the Second Circuit held that the clause "[i]f any dispute or difference should arise under this Charter," was not "sufficiently broad to encompass a dispute or controversy about an alleged fraudulent inducement of the contract[.]" 287 F.2d 951, 952–53 (2d Cir. 1961). The *Kinoshita* Court found the arbitration language at issue to be narrow because "the clause restrict[ed] arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance." *Id.* at 953.

For decades, the Second Circuit has repeatedly and expressly "confine[d] *Kinoshita* to its precise facts." *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984). Indeed, the Second Circuit has often found arbitration clauses to be distinguishable from the clause in *Kinoshita*—and therefore to be "broad" clauses—where the relevant textual differences appear minimal. *See, e.g., ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 27 (2d Cir.2002) (classifying as broad arbitration clause covering "any dispute [that] shall arise between the parties hereto with reference to the interpretation of this Agreement or their rights with respect to any transaction involved"); *Louis Dreyfus*, 252 F.3d at 223 (classifying as broad clause covering disputes "arising from the making, performance or termination" of the agreement); *Genesco*, 815 F.2d at 845 (classifying as broad and distinguishable from *Kinoshita* clause requiring arbitration of "[a]ll claims and disputes of whatever nature arising under this contract").

In short, "*Kinoshita* must be confined to its 'precise facts'-that is, to the phrase 'arising under' or, at most, to 'its equivalent[.]'" *ACE Capital*, 307 F.3d at 33 (*quoting S.A. Mineracao*, 745 F.2d at 194); *see, e.g., Bristol–Myers Squibb Co. v. SR Int'l Bus. Ins. Co.*, 354 F.Supp.2d 499, 505

(S.D.N.Y.2005) (classifying arbitration clause as narrow because "the operative language of the clause at issue here is substantially identical to that in the *Kinoshita* clause"). The Second Circuit's express rationale for "declin[ing] to overrule ... *Kinoshita*, despite its inconsistency with federal policy favoring arbitration, particularly in international business disputes," was a "concern[ ] that contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision[ ]" that is deliberately designed to encompass a narrow set of disputes. *See S.A. Mineracao*, 745 F.2d at 194. This rationale explains the import of guarding against any expansion of *Kinoshita* to apply to clauses that vary at all from its precise language.

█ The Court has little trouble finding the Arbitration Clause at issue here to be broad. The Arbitration Clause reads as follows: "All disputes, claims or controversies arising under this Agreement, including the breach, termination or validity thereof ... shall be finally settled by arbitration ...." (Shareholder Agreement, at 8 (Docket No. 1, Ex. 4).) Plaintiffs argue that the Arbitration Clause is "indistinguishable" from the *Kinoshita* clause because both feature the words "arising under." (Plaintiff's January 30, 2012 Letter (Docket No. 25) at 2.) However, the Second Circuit has held that similarity to be insufficient to render narrow a given clause. *See ACE Capital*, 307 F.3d at 31 ("[W]e have not automatically construed as narrow arbitration clauses containing such phrases as 'under the agreement' or 'hereunder.'" (*citing S.A. Mineracao*, 745 F.2d 190)); *Genesco*, 815 F.2d at 845–46.

The Arbitration Clause is distinct from the *Kinoshita* clause in two important ways and these differences far outweigh any superficial similarities arising from a shared invocation of the phrase "arising under." Most importantly, the Arbitration Clause expressly covers disputes regarding the validity of the Shareholder Agreement—such as claims of fraudulent inducement or duress—and thereby indisputably reaches collateral matters that require more than the textual interpretation of the contract. That it reaches issues beyond those of contractual interpretation renders the Arbitration Clause distinguishable from the *Kinoshita* clause. *See Kinoshita*, 287 F.2d at 953 (classifying arbitration clause as narrow specifically because it "restricts arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance"); *Louis Dreyfus*, 252 F.3d at 226 ("[T]he distinction is more than just a semantic one [because] only the [*Kinoshita*] phrase limits arbitration to a literal interpretation or performance of the contract."). Additionally, the Arbitration Clause adds the words "claims" and "controversies" to "disputes," also evincing greater breadth than the *Kinoshita* clause. *See S.A. Mineracao*, 745 F.2d at 194 (finding that inclusion of word "question" in addition to "dispute" rendered arbitration clause distinguishable from *Kinoshita*). Accordingly, the Arbitration Clause, which is distinguishable from the *Kinoshita* clause, is broad.

### B. *THE ARBITRATION CLAUSE COVERS THE INSTANT DISPUTE*

Because the Court finds that the Arbitration Clause is broad, the "presumption of arbitrability" attaches and Plaintiffs bear the burden of providing "positive assurances that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute." *Oldroyd*, 134 F.3d at 76 (quotations and emphasis omitted).

█ "In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on

the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc.*, 815 F.2d at 846. "If the allegations underlying the claims 'touch matters' covered by the parties' [contracts], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (*quoting Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). In this circuit, it is "plain ... that where the arbitration clause at issue is a broad one, it is presumptively applicable to disputes involving matters going beyond the 'interpret[ation] or enforce[ment of] particular provisions' of the contract which contains the arbitration clause." *JLM Industries, Inc. v. Stolt–Nielsen SA,* 387 F.3d 163, 172 (2d Cir.2004) (*quoting Oldroyd*, 134 F.3d at 77) (alterations in original).

The Court finds that Plaintiffs claims in this case are within the scope of the Arbitration Clause because the factual allegations supporting those claims most certainly "touch matters" addressed in the Shareholder Agreement.

First, for all practical purposes. Plaintiffs have conceded that the facts supporting their causes of action relate to matters addressed in the Shareholder Agreement. In the Original Complaint, Plaintiffs stated that "there is a need for the rights and obligations of the parties under the Shareholder Agreement to be determined by the court." (Complaint, Docket No. 1, Ex. 1 at 7.) In their January 30, 2012 letter brief, Plaintiffs assure the Court that the Amended Complaint makes no new factual allegations and sets forth new claims that "arise out of the conduct, transaction or occurrence set forth in the original pleading," as required for an amendment as of right under Federal Rule of Civil Procedure 15(c)(2). (*See* Plaintiff's January 30, 2012 Letter (Docket No. 25) at 1.) Plain-tiffs offer no explanation as to how, if the factual allegations in each complaint are identical, the claims in the Amended Complaint fail to "touch matters" Plaintiffs themselves have characterized as requiring judicial consideration of the Shareholder Agreement.

Second, the restated causes of action in the Amended Complaint include alleged violations of Cayman Islands law. Cayman Islands law is applicable because the Shareholder Agreement provides for the application of that law in its choice of law provision and that CAC Caymans be incorporated under Caymans Island law. This relationship between the Shareholder Agreement and the governing law also demonstrates that Plaintiffs' claims "touch matters" within the Shareholder Agreement.

Third, Plaintiffs base some of the causes of action initially raised in the Amended Complaint upon language in the CAC Caymans Articles of Association; the precise language Plaintiffs invoke is derived from and dictated by the Shareholder Agreement. (*See* Shareholder Agreement, at 2 (Docket No. 1, Ex. 4).) In connection with asserting these causes of action, Plaintiffs specifically admit and allege that "Defendants have clearly infringed key provisions of the Shareholder Agreement." (Amended Complaint, ¶ 15 (Docket No. 15).) To the extent that Plaintiffs' causes of action are based on language included in the CAC Caymans Articles of Association because such language was required by the Shareholder Agreement, Plaintiffs allege facts supporting claims that both agreements have been breached. It is beyond cavil that a cause of action expressly based on the breach of the Shareholder Agreement "touches matters" in the Shareholder Agreement.

Plaintiffs argue that the Arbitration Clause does not apply because they have

articulated causes of action based on the CAC Caymans Articles of Association and other contracts between the parties that do not include arbitration clauses. (*See* Plaintiff's January 30, 2012 Letter (Docket No. 25) at 1.) However, courts commonly find that contractual claims founded upon one agreement may still sufficiently relate to another agreement such that the latter agreement's arbitration clause compels arbitration of the entire dispute. *See Collins & Aikman,* 58 F.3d at 20 ("[A]lthough claims two and three seek relief under the 1988 Agreement, our analysis is not controlled by the characterization of them in the pleading. Instead, we look to the conduct alleged and determine whether or not that conduct is within the reach of the 1977 arbitration clause.") As the *Collins & Aikman* court further explained:

> The question is not whether the second and third claims arise under the 1988 Agreement, which has no arbitration clause; the question is whether these claims plead conduct that "aris[es] out of or [is] related to" the 1977 Contracts, which does have such a clause. To the extent that these claims (no matter how they are labeled) allege conduct that violated the 1977 Contracts, they would be arbitrable (even if they are not arbitrable as separate causes of action) in the sense that the *allegations* embedded within the claims have potential bearing on a claim for wrongful termination of the 1977 Contracts.

*Id.* at 21. *See also Vermont Pure Holdings, Ltd. v. Descartes Sys. Grp., Inc.,* 140 F.Supp.2d 331, 335 (D.Vt.2001) ("Although Vermont Pure attempts to cast its claims under the PSA and not the SLA, it is clear that its claims are necessarily connected to the SLA such that they are covered by its arbitration clause.").

Fourth and finally, the first paragraph of the Shareholder Agreement makes clear that it was the parties' intention for that contract to dictate the terms of their relationship as it pertained to the ownership of CAC Caymans, Digisec, and Yamei. The Shareholder Agreement states that it governs "relationships among [the parties] as direct or indirect shareholders of China Auto Care (Caymans) ... the sole shareholder of Digisec Corporation ... that, in turn, is the sole shareholder of ... Yamei ...." (*See* Shareholder Agreement, at 1 (Docket No. 1, Ex. 4).) The parties, then, clearly intended for the Shareholder Agreement to define the rights and relationships at issue in this dispute. Each and every one of the causes of action pled in Plaintiffs' amended complaint is based upon the Trimble transaction and allegations that Defendants' execution of that transaction degraded or disregarded Plaintiffs' rights under the Shareholder Agreement as owners of CAC Caymans and Digisec. Because the Shareholder Agreement defines those ownership rights, Plaintiffs cannot escape the conclusion that their claims—no matter how they are styled—relate to the Shareholder Agreement and are therefore within the ambit of that contract's broad Arbitration Clause.

### III. CONCLUSION

The Court issued the April 27, 2012 Order (Docket No. 26) for the reasons described herein and now reiterates that Order, staying this litigation pending arbitration.

**SO ORDERED.**