**Daniel MCINTIRE, Plaintiff,**

v.

**CHINA MEDIAEXPRESS HOLDINGS, INC., et al. Defendants.**

**In re Chinamedia Express Holdings, Inc. Shareholder Litigation**

**11–cv–804 (VM)**

United States District Court, S.D. New York.

Signed October 21, 2015

in which the same persons are alleged to be fraudsters under the securities laws and imprudent managers under ERISA.

**175.** *Rinehart,* 722 F.3d at 151.

Samuel Howard Rudman, Robbins Geller Rudman & Dowd LLP, Melville, NY, Jason Allen Zweig, Hagens Berman Sobol Shapiro LLP, New York, NY, Jeffrey A. Berens, Law Office of Jeffrey A. Berens, LLC, Denver, CO, Jeniphr Breckenridge, Steve W. Berman, Hagens, Berman, Sobol, Shapiro, LLP, Seattle, WA, Marshall Pierce Dees, Holzer & Holzer, LLC, Atlanta, GA, Reed Richard Kathrein, Hagens Berman Sobol Shapiro LLP, Berkeley, CA, for Plaintiff.

Michael Edward Marr, Solo Practitioner, Baltimore, MD, Jesse James, Savvas Antonios Foukas, William R. Maguire, Hughes Hubbard & Reed LLP, Miles Norman Ruthberg, Latham & Watkins LLP, Gary Frederick Bendinger, Gazeena Kaur Soni, Sidley Austin LLP, New York, NY, David Andrew Gordon, Sidley Austin LLP, Chicago, IL, Elizabeth Leanne Howe, Michael Dana Warden, Sidley Austin LLP, Washington, DC, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, United States District Judge

This action arises from a dispute over insurance coverage for China MediaExpress Holdings Inc. ("CCME") written by non-parties Torus Insurance UK ("Torus") and Starr Underwriting Agents Limited

(on behalf of Lloyd's Syndicate CVS 1919)("Starr")(collectively "Insurers"). Karl Barth ("Barth" or "Receiver"), as Court-appointed Receiver for CCME's assets, seeks to enjoin the Insurers from proceeding with an arbitration of that coverage dispute in Hong Kong naming Barth as a respondent. Numerous letters from Insurers and Barth have been filed with the Court. The Court now enjoins Insurers from proceeding with the current arbitration because the Court did not grant leave to join Barth as a respondent prior to Insurers' filing. In light of federal law and policy favoring enforcement of valid arbitration provisions, however, the Court reserves judgment at this time as to whether future arbitration filed with leave of the Court would be proper, and directs Barth to show cause why the underlying insurance coverage dispute should not be submitted to arbitration, under the terms of the parties' agreement, with leave of the Court.

## I. BACKGROUND

On August 13, 2015, Insurers filed in Hong Kong a Demand for Arbitration naming Barth in his capacity as court-appointed Receiver for CCME's assets. ("Demand for Arbitration," Dkt. No. 262 Ex. A.) The Demand for Arbitration sought a declaration that CCME was not covered by Directors and Officers Liability and Company Reimbursement Liability Insurance Policy No. DO10AA47U (the "Policy") written by Insurers in 2010. The Policy's arbitration provisions specified Hong Kong as the forum for dispute resolution.

By letter to the Court dated August 29, 2015 ("Aug. 29 Letter") Barth requested leave to file a motion to enjoin Insurers from proceeding with an arbitration naming Barth as a respondent. (Dkt. No. 262.) Barth argues that because he serves as a Court-appointed receiver, the common law Barton Doctrine, as enunciated by the Supreme Court in Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881), required the Insurers to obtain leave from the Court prior to naming Barth as a respondent in the arbitration. (Id. at 2.) Barth further contends that because compliance with the Barton Doctrine is jurisdictional, Insurers' failure to obtain leave of the Court prior to filing the arbitration "definitively renders the arbitration void ab initio." (Id. at 2–3.)

Insurers responded by letter to the Court dated September 1, 2015 ("Sept. 1 Response Letter"), countering that it is "questionable" whether the Barton Doctrine applies in a non-bankruptcy proceeding where the only remedy sought is declaratory relief. (Dkt. No. 259 at 2.) Insurers filed a second letter on September 1, 2015 ("Sept. 1 Motion Letter") requesting court approval to file a motion granting Insurers leave retroactively to name Barth as a respondent in the arbitration. (Dkt. No. 261.) Barth replied by letter dated September 3, 2015, ("Sept. 3 Letter") asserting again that the Insurers' failure to obtain prior leave from the Court deprived the arbitration of subject matter jurisdiction, which could not be remedied by retroactive leave to file. (Dkt. No. 260 at 1.)

On September 17, 2015, the Court held a telephone conference with Barth and Insurers. The Court directed Insurers to submit a letter-brief to the Court addressing the application of the Barton Doctrine in this case. By letter dated September 28, 2015 ("Sept. 28 Letter"), Insurers outlined their objections to the application of the Barton doctrine in this case. (Dkt. No. 265.) They argue that bankruptcy cases and actions for monetary judgment—in which the doctrine is routinely applied—"implicate [ ] entirely different

concerns than a declaratory relief coverage action naming Mr. Barth, a limited purpose receiver." (*Id.* at 3.) In addition, Insurers raise objections to the *Barton* Doctrine's application in light of federal policy in favor of arbitration, which Insurers argue would deprive the Court of jurisdiction over the arbitration even if it determined the *Barton* Doctrine did apply. (*Id.* at 5.) In response, Barth filed a letter dated October 1, 2015 ("Oct. 1 Letter") contending that the *Barton* Doctrine applies broadly to suits including non-bankruptcy cases and declaratory judgment actions. (Dkt. No. 266, at 1.)

Before the Court had taken action on the Receiver's motion, Barth filed a second letter on October 8, 2015 ("Oct. 8 Letter"), requesting that the Court amend its Order appointing Barth as Receiver to include an anti-litigation provision that would prohibit "any person or entity" from taking any action that would "impact the property and assets" subject to the Receiver's control. (Dkt. No. 269, at 1.) Insurers responded on October 13, 2015 ("Oct. 13 Letter") arguing that the proposed anti-litigation order would function as an anti-arbitration injunction in violation of the Federal Arbitration Act ("FAA") and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). (Dkt. No. 267, at 2.) Barth and Insurers exchanged three additional letters related to the propriety of the proposed anti-litigation order on October 14 and October 15.

The Court has received no further correspondence relating to the Insurers' Demand for Arbitration or the proposed anti-litigation provision. The Court construes Barth's Aug. 29 Letter and subsequent Letters as a motion to enjoin the arbitration filed by the Insurers, and further construes Insurers' Sept. 1 Response Letter and subsequent Letters as a motion for retroactive leave to file the Demand for

Arbitration naming Barth as a respondent. The Court now considers those motions.

## II. DISCUSSION

### A. Applicability of the Barton Doctrine

A receiver is an officer of the court which appointed him or her and "cannot be sued without the court's consent." *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 69 F.2d 60, 62 (2d Cir.1934)(citing *Barton*, 104 U.S. at 137. The *Barton* Doctrine, developed from common law by the Supreme Court, provides that a suit may not be brought against a receiver without leave of such receiver's appointing court. It has been applied in a "well-recognized line of cases." *In re Lehal Realty Associates*, 101 F.3d 272, 276 (2d Cir.1996); *see also Matter of Linton*, 136 F.3d 544, 545 (7th Cir.1998) ("An unbroken line of cases ... has imposed this requirement as a matter of federal common law.") The Second Circuit has recognized that the *Barton* Doctrine extends to bankruptcy as well as receivership, *see Vass v. Conron Bros.*, 59 F.2d 969, 971 (2d Cir.1932), and lower courts have applied it to declaratory judgment actions, *see Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 460 B.R. 106, 116 (Bankr.S.D.N.Y.2011), *aff'd*, 474 B.R. 76 (S.D.N.Y.2012) ("*Madoff*"), as well as suits seeking damages, *see In re Biebel*, 02–32865, 2009 WL 1451637, at *4 (Bankr.D.Conn. May 20, 2009).

Barth argues that, pursuant to the *Barton* Doctrine, Insurers were required to seek leave of the Court prior to naming Barth, a court-appointed receiver, as a respondent in the arbitration. In response, the Insurers assert that the *Barton* Doctrine does not apply to this action. They argue that the Doctrine applies with less force outside of bankruptcy or where the form of relief sought is a declaratory judgment. The Insurers reason that the justi-

fications behind the *Barton* Doctrine are twofold: first, to protect receivers from personal liability for actions taken in the course of their duty; and second, to prevent some claimants to a bankrupt estate from gaining advantage over other claimants as regards assets controlled by the receiver. They argue that neither of these justifications apply here, because the Hong Kong arbitration proceeding does not seek monetary judgment against Barth, nor does it directly impact any assets of CCME.

Instead, Insurers contend that the Court should follow the example of two district courts outside of the Second Circuit that have found the *Barton* Doctrine inapposite. Those decisions—arising from a suit to enjoin discovery by a trustee, *PFS Investments v. Imhoff,* No. 11–10142, 2012 WL 254125 (E.D.Mich. Jan. 27, 2012), and an action seeking a declaration resolving ownership of certain causes of action, *In re TierOne Corp,* 4:10–BK–41974, 2013 WL 5526721 (Bankr.D.Neb. Oct. 4, 2013)—relied largely on the courts' findings that the proceedings did not affect either the receiver's personal liability or the receivership assets. Insurers claim that these cases stand broadly for the proposition that declaratory judgment actions which do not seek money or estate property from the trustee are not covered by the *Barton* Doctrine.

■ The Court is not persuaded that the *Barton* Doctrine is inapplicable under the circumstances Insurers describe. First, the *Barton* Doctrine clearly applies to all proceedings involving receivers—not bankruptcy alone. *Barton* was itself a receivership case, and only later was the Doctrine extended to bankruptcy actions. *See Vass,* 59 F.2d at 970. Insurers cite *In re Crown Vantage,* 421 F.3d 963 (9th Cir. 2005) stating that the policies underlying the Doctrine apply "with greater force to

bankruptcy proceedings than to other proceedings involving receivers." *Id.* at 971. The holding of *Crown Vantage,* however, undercuts the Insurers' claim, as the Ninth Circuit specifically found that the *Barton* Doctrine applied with equal validity where the court-appointed officer was not a bankruptcy trustee. *See id.* at 973. Regardless of whether other unique considerations may apply in bankruptcy, the Court concludes that the requirements of the *Barton* Doctrine apply equally to bankruptcy trustees and other court-appointed receivers.

■ Second, the *Barton* Doctrine is not restricted to suits against a receiver for damages. The Doctrine holds broadly that "before suing a court-appointed receiver, the petitioning party must first seek leave of the court that appointed him or her." *Madoff,* 460 B.R. at 116. In addition to protecting a court-appointed receiver from personal liability, the Doctrine is intended to protect the receivership court's "overriding interest in [the] administration of the estate." *In re Lehal,* 101 F.3d at 277. Insurers ask the Court to read into the *Barton* Doctrine a limitation that is not supported by the Doctrine on its face or by Second Circuit authority. In *Madoff,* 460 B.R. 106, the court enjoined a declaratory judgment action brought against a trustee in the Cayman Islands, finding that the action violated the *Barton* Doctrine. In the same vein, the *Barton* Doctrine has been consistently applied to declaratory judgment actions. *See In re Gen. Growth Properties, Inc.,* 426 B.R. 71, 76 (Bankr. S.D.N.Y.2010); *Seaman Paper Co. of Mass., Inc. v. Polsky,* 537 F.Supp.2d 233, 236 (D.Mass.2007).

Here, contrary to the Insurer's argument that the arbitration does not impact CCME's assets, the declaratory relief sought in the arbitration action involves the very assets that the Receiver was ap-

pointed to marshal. The Court's order appointing Barth as Receiver defines his appointment as "for the limited purpose of marshaling CCME's assets" (Dkt. No. 230); a later order clarified that pursuing claims against third parties, including CCME's former insurers, is within Barth's powers as Receiver. (Dkt. No. 246.)[1]

Finally, that Insurers seek to file an arbitration does not lead the Court to conclude that the *Barton* Doctrine does not apply. Although this Court recognizes the important policy considerations surrounding the role of federal district courts in contractual arbitration agreements, discussed further *infra* at II(C), it also notes that the rationale underlying *Barton* extends to arbitrations and that district courts have at times stayed arbitration to protect a receivership court's control over receivership assets. *See S.E.C. v. Byers*, 08–CV–7104, 2012 WL 954254, at *3 (S.D.N.Y. Feb. 28, 2012). The Second Circuit has not considered whether the *Barton* Doctrine applies equally to arbitration, and the Court declines to create such an exception here.

Therefore, the Court finds that the *Barton* Doctrine applies in this case to prohibit the Insurers from naming Barth in his capacity as Court-appointed Receiver as a respondent to the August 2013 arbitration.

### B. *Retroactive Leave to File The Arbitration*

Insurers argue that even if the *Barton* Doctrine applies in this case, they should, in the alternative, be granted leave retroactively to file the Demand for Arbitration against Barth.

The *Barton* Doctrine is jurisdictional in nature, and failure to seek leave of the receiver's appointing court bars exercise of subject matter jurisdiction over any third-party suit. "Where the Doctrine is violated, [t]he only appropriate remedy ... is to order cessation of the improper action." *Madoff*, 460 B.R. at 116 (*quoting Crown Vantage*, 421 F.3d at 970)). In *In re Lehal*, 101 F.3d at 277, the Second Circuit upheld a lower court's decision to bar retroactive leave to file suit against a receiver, and lower courts have cited that decision to enjoin suits filed in violation of *Barton*. *See, e.g., Biebel*, 2009 WL 1451637, at *6 ("Since prior leave of this court was not sought prior to instituting the Defendant's Action, such action must be permanently enjoined.")

The Insurers point to a small handful of bankruptcy courts that granted retroactive relief to petitioners who would be barred by the *Barton* Doctrine.[2] Those decisions stand in contradiction to the Second Circuit's decision in *In re Lehal* and the general rule that a complaint filed without leave of court lacks subject matter jurisdiction and cannot be remedied through retroactive leave. *See In re Summit Metals*, 477 B.R. 484, 503 (Bankr.D.Del.2012) (finding complaint "void *ab initio* for viola-

---

1. Barth had moved previously for appointment to "investigate the potential value of CCME's insurance coverage ... [and] take any actions, including the filing of litigation or arbitration, that may be necessary to enforce CCME's rights under the insurance policies." (Dkt. No. 224.)

2. Insurers cite *In re Brownsville Prop. Corp., Inc.*, 473 B.R. 89, 92 (Bankr.W.D.Pa.2012) (reasoning that if case was dismissed without prejudice Plaintiff would 'simply reinitiate the process'); *In re Lambert*, 438 B.R. 523 (Bankr.M.D.Pa.2010); and *In re Allied Sign Co, Inc.*, 280 B.R. 688 (Bankr.S.D.Ala.2001) (finding that estate of the debtor would not be impacted by allowing state court action to go forward). *Lambert* was later abrogated by the Third Circuit in *In re VistaCare Group LLC*, 678 F.3d 218 (3d Cir.2012), which affirmed the applicability of the *Barton* Doctrine in the Third Circuit.

tion of the *Barton* Doctrine"); *see also McDaniel v. Blust*, 668 F.3d 153, 156 (4th Cir.2012); *Crown Vantage*, 421 F.3d at 970; *Blixseth v. Brown*, 470 B.R. 562, 573 (D.Mont.2012); *In re Biebel*, 2009 WL 1451637, at \*4; *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 558–59 (Bankr.N.D.Ill. 2000).

▮ The Court notes that a central purpose of the *Barton* Doctrine is to ensure the receiver's appointing court control over the receivership assets, and the jurisdictional requirement that plaintiffs seek leave before filing suit "continue[s] to be enforced because [it] implement[s] major policies deemed to be of overriding importance." *In re Reinert*, No. AP 14–02204–JAD, 2015 WL 1206714, at \*4 (Bankr. W.D.Pa. Mar. 12, 2015) (*citing In re Herrera*, 472 B.R. 839, 853 (Bankr.D.N.M. 2012)).

Accordingly, the Court declines to grant the Insurers retroactive leave to file the Demand for Arbitration.

### C. *Resolution of the Insurance Coverage Dispute*

The Court recognizes that enjoining Insurers' currently filed Demand for Arbitration leaves the underlying dispute regarding CCME's insurance policy coverage unresolved. The Insurers are enjoined from proceeding with the current arbitration but are not prohibited from seeking leave from the Court for a future arbitration.

Barth argues that an order enjoining all future litigation, including arbitration, is necessary to permit him to marshal and preserve CCME's assets as mandated by his position as Receiver. (Oct. 8 Letter at 1). Such an order would presumably leave this Court to interpret the provisions of CCME's insurance policy and ultimately to decide the dispute arising in connection with the Policy, in contradiction to CCME and Insurers' arbitration agreement.

▮ The Court declines to issue the anti-litigation order proposed by the Receiver. Although district courts are authorized to issue stays or enjoin future litigation to preserve their control over receivership assets, *see Byers*, 2012 WL 954254, at \*3, an anti-litigation order here would function in practice as an anti-arbitration injunction. The Court's authority to enjoin arbitration proceedings is limited by the Federal Arbitration Act to situations where the underlying arbitration agreement is invalid or nonbinding. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir.2011); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). Anti-arbitration injunctions issued by district courts where a valid agreement to arbitrate exists are strongly disfavored. *See Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 134 (2d Cir.2015).

The Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1–16, and the Convention, 9 U.S.C. Section 201, counsel in favor of resolving the dispute over CCME's insurance coverage through arbitration. The Convention mandates arbitration where (1) there is a written agreement; (2) arbitration is to take place in a Convention signatory; (3) the subject matter is commercial; and (4) one party is not a United States Citizen. *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.* 198 F.3d 88, 92 (2d Cir.1999). Each of the Convention's requirements are met here. For the Court to decide the insurance coverage dispute where a binding agreement to arbitrate exists would contradict the FAA's strong preference in favor of arbitration, particularly with regard to international arbitration agreements. *See Moses H. Cone Mem'l Hosp.*

*v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 629, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

Insurers have raised compelling points regarding the district court's authority under the FAA and the Convention to enjoin future arbitration where a valid agreement to arbitrate exists. Accordingly, the Court reserves judgment at this time as to whether resolution of the insurance coverage shall be subject to arbitration as provided in the Policy, and directs the Receiver to show cause why a future arbitration naming CCME and Barth as respondents, and filed in accordance with the terms of the parties' agreement with leave of the Court, should not proceed.

### III. *ORDER*

Accordingly, it is hereby

**ORDERED** that the motion of Court-appointed Receiver Karl Barth ("Barth") to enjoin non-parties Starr Underwriting Agents Limited (on behalf of Lloyd's Syndicate CVS 1919) and Torus Insurance UK (collectively "Insurers") from proceeding with the Demand for Arbitration filed on August 13, 2015 is **GRANTED;** and it is further

**ORDERED** that Insurers' application for leave to file such arbitration retroactively is **DENIED;** and it is further

**ORDERED** that within five (5) days of the entry of this Order, Barth show cause, by letter not to exceed three (3) pages, why the court should not grant Insurers leave to file arbitration against China MediaExpress Holdings, Inc. by and through Barth to determine coverage under Directors and Officers Liability and Compa-ny Reimbursement Liability Insurance Policy No. DO10AA47U.

**SO ORDERED.**