CHINA MEDIA EXPRESS HOLD-
INGS, INC., BY Karl BARTH
as Receiver, Plaintiff,

v.

NEXUS EXECUTIVE RISKS, LTD. (f/k/a Torus Executive Risks, Ltd.); Torus Insurance (UK) Limited; AIG Insurance Hong Kong Limited (f/k/a Chartis Insurance Hong Kong Limited); American Home Assurance Company; China Pacific Insurance Co. (H.K.), Ltd.; and China Ping an Insurance (Hong Kong) Co. Ltd., Defendants.

15 Civ. 8429 (VM)

United States District Court,
S.D. New York.

Signed 04/25/2016

Scott D. Gilbert, Wellford Hunter Winstead, Gilbert LLP, Washington, DC, Jason Allen Zweig, Hagens Berman Sobol Shapiro LLP, New York, NY, for Plaintiff.

Scott B. Schreiber, Arthur Luk, Arnold & Porter, LLP, Washington, DC, Stewart David Aaron, Arnold & Porter, LLP, Edward J. Kirk, Scott Warren Schwartz, Clyde & Co. US LLP, New York, NY, Kim W. West, Clyde & Co. US LLP, San Francisco, CA, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff China MediaExpress Holdings, Inc. ("CME"), by and through court-appointed Receiver Karl P. Barth ("Barth" or "Receiver"), brought this action against defendants American Home Assurance Company ("American Home"), China Pacific Insurance Co., (H.K.) Ltd. ("China Pacific"), and China Ping An Insurance (Hong Kong) Company Ltd.("China Ping An," together with China Pacific "Second Excess Insurers"). These three defendants (collectively "Defendant Insurers") are insurers of CME. The complaint ("Complaint," Dkt. No. 6) asserts claims of breach of contract and breach of duty of good faith and fair dealing arising from Defendant Insurers' failure to defend and indemnify CME for securities-related litigation against CME commenced in 2011.

American Home moved to dismiss the Complaint, arguing that the action should be dismissed in light of the arbitration clause in the insurance policy issued to CME by American Home ("Excess Policy") or, alternatively, that the Court should compel arbitration in Hong Kong as dictated by the Excess Policy. (Dkt. No. 23.) Separately, the Second Excess Insurers moved to dismiss the Complaint and compel arbitration in Hong Kong pursuant to the arbitration clause in the insurance policy issued to CME by the Second Excess Insurers ("Second Excess Policy"). (Dkt. No. 30.) Both motions to dismiss ("Motions") seek leave to initiate arbitration against Barth in his capacity as Receiver in Hong Kong. CME opposed the Motions separately. (Dkt. Nos. 26, 38.) American Home and the Second Excess Insurers each replied. (Dkt. Nos. 27, 39.)

For the reasons set forth in this Decision and Order, the Court GRANTS the Defendant Insurers' Motions to compel arbitration according to the terms of the Excess Policy and Second Excess Policy and stays all claims brought by the Receiver pending arbitration.

## I. BACKGROUND[1]

### A. THE UNDERLYING LAWSUITS AGAINST CME

The facts of the underlying litigation giving rise to this case have been detailed in the Court's previous decisions in *In re China MediaExpress Holdings, Inc. Shareholder Litigation.*[2] However, a review is warranted here. CME, a Delaware corporation with its principal place of business in Hong Kong, was created in 2009 through a "reverse merger" of a Chinese firm with a publicly traded company in the United States. After the completion of the reverse merger, CME was the defendant in a series of lawsuits and administrative proceedings alleging accounting fraud and securities fraud. One of those actions was a 2011 class action suit brought by CME's investors before this Court ("Securities Class Action,")[3] alleging violations of federal securities law based on misstatements in public filings and press releases prior to a steep decline in CME's share prices in early 2011. After CME's counsel withdrew from representing CME in the Securities Class Action due to non-payment, a default judgment in the amount of $535.5 million was entered against CME pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. *See In re China MediaExpress Holdings, Inc. Shareholder Litigation,* 11 Civ. 804, Dkt. No. 193 (S.D.N.Y. Jan. 17, 2014). Further judgments were entered against CME in the other matters, including a $40 million arbitration award issued in a Hong Kong arbitration filed by investor Starr Investments Cayman II, Inc. and a $49 million penalty in a SEC administrative proceeding and civil lawsuit. The Court subsequently appointed Barth to serve as CME's receiver for the limited purpose of marshaling CME's assets. Barth's responsibilities include "the filing of litigation or arbitration that may be necessary to enforce CME's rights under [its] insurance policies." *In re China MediaExpress,* 11 Civ. 804, Dkt. Nos. 224, 230 (S.D.N.Y. Aug. 18, 2014 and Aug. 26, 2014).

---

1. The facts discussed herein are drawn from the pleadings in this case: CME's Complaint (Dkt No. 6); American Home's Memorandum of Law in Support of Motion to Dismiss or Compel Dispute Resolution in Hong Kong (Dkt. No. 24); China Pacific and China Ping An's Memorandum of Law in Support of Motion to Dismiss Action and Compel Arbitration (Dkt. No. 31); Receiver's Memorandum of Law in Opposition to American Home's Motion to Dismiss or Compel Dispute Resolution in Hong Kong (Dkt. No. 26); Receiver's Opposition to China Pacific and China Ping An's Motion to Dismiss Action and Compel Arbitration (Dkt. No. 38); China Pacific and China Ping An's Reply Brief in Support of Motion to Dismiss and Compel Arbitration (Dkt. No. 39); and American Home's Reply Memorandum in Further Support of Motion to Dismiss or Compel Dispute Resolution in Hong Kong (Dkt. No. 27). Except where specifically quoted, no further reference to these documents will be made.

2. *See McIntire v. China MediaExpress Holdings, Inc.,* 114 F.Supp.3d 131 (S.D.N.Y.2015); *McIntire v. China MediaExpress Holdings, Inc.,* 113 F.Supp.3d 769 (S.D.N.Y.2015); *McIntire v. China MediaExpress Holdings, Inc.,* 927 F.Supp.2d 105 (S.D.N.Y.2013). These decisions were issued in the consolidated case captioned *In re China MediaExpress Holdings, Inc. S'holders Litig.,* 11 Civ. 804 (S.D.N.Y.).

3. *In re China MediaExpress Holdings, Inc. S'holders Litig.,* 11 Civ. 804 (S.D.N.Y.).

## B. *THE INSURANCE POLICIES*

From October 16, 2010 to October 15, 2011—the period in which the Securities Class Action and other related actions arose—CME maintained several layers of liability insurance. CME's insurance consisted of: (1) a primary directors and officers liability insurance policy ("Primary Policy") with a limit of $5 million in coverage written by Torus Insurance UK ("Torus") and Starr Underwriting Agents Ltd. ("Starr")(together with Torus, the "Primary Insurers"); (2) the Excess Policy written by American Home's Hong Kong Branch with a $5 million limit in losses exceeding the coverage provided by the Primary Policy; and (3) the Second Excess Policy written by the Second Excess Insurers with a $10 million limit in losses exceeding the coverage provided by the Primary and Excess Policies, 60 percent of which would be paid by China Pacific and 40 percent of which would be paid by China Ping An. Each policy was negotiated and executed through CME's insurance broker, which was also based in Hong Kong. The Excess Policy and Second Excess Policy were subject to all material terms and conditions of the Primary Policy, including the Primary Insurers' obligations to fund the defense of covered claims against CME and to pay judgments against CME in excess of the Primary Policy's retention.

The Primary Policy, Excess Policy, and Second Excess Policy all contain dispute resolution provisions mandating dispute resolution via mediation or arbitration. The Primary Policy, Section IX, provides:

> It is agreed that any dispute or disagreements which arise in connection with this Policy and cannot be resolved through negotiation shall be resolved through final and binding arbitration. The dispute shall be submitted to the American Arbitration Association for resolution pursuant to its then prevailing commercial arbitration procedures. (Dkt. No. 6, Ex. A at 21.)

The Primary Policy provides in a separate endorsement that any dispute regarding any aspect of the operation of the Primary Policy must first be mediated before proceeding to arbitration. (Dkt. No. 6, Ex. A at 35.)

The Excess Policy, Condition No. 13, provides:

> Any dispute between the Insurer(s) [American Home] and the Policyholder [CME] and/or between the Insurers and the Insureds arising out of this Policy which cannot be resolved by agreement between the Insurer(s) and the Insureds within 6 months, shall be referred to mediation at by the Hong Kong International Arbitration Centre ("HKIAC") and in accordance with its Mediation Rules. If the dispute remains unresolved after mediation, it shall be referred to and determined and resolved by arbitration at HKIAC.... It shall be a condition precedent to any right of action or suit upon this Policy that an arbitration award should first be obtained. (Dkt. No. 6, Ex. B at 8.)

The Second Excess Policy incorporates the Primary Policy's arbitration provision mandating arbitration of any dispute arising "in connection with" the policy. The Second Excess Policy also includes Endorsement No. 1, which provides:

> Any interpretation of this policy relating to its construction, validity or operation shall be determined by the laws of the jurisdiction in Hong Kong.... Any dispute between the insurer and the Insured regarding any aspect of the operation of this Policy which cannot be resolved by agreement between the Insurer and the Insured within six (6) months, shall be referred to a mutually agreed mediator. If the dispute re-

mains unresolved after the mediation, it shall be resolved by arbitration in the jurisdiction in Hong Kong. (Dkt. No. 6, Ex. C at 8.)

The Excess Policy and Second Excess Policy, like the Primary Policy, contain choice of law provisions selecting Hong Kong law to govern the interpretation of the policy.

After the Securities Class Action was filed, CME informed the Primary Insurers and requested that they advance CME's defense costs. The Primary Insurers acknowledged their coverage obligations subject to a reservation of rights and requested further information from CME but ultimately refused to advance defense costs or indemnify CME for any judgment on the grounds of breach of warranty or fraudulent misrepresentation. American Home and the Second Excess Insurers adopted the coverage positions asserted by the Primary Insurers and declined to advance CME's defense costs.

## C. THE COURT'S PRIOR FINDINGS ON ARBITRATION

In his capacity as Receiver, Barth made a demand on the Primary Insurers, American Home, and the Second Excess Insurers for payment under the insurance policies. After receiving Barth's demand, the Primary Insurers filed a demand for arbitration in Hong Kong on August 13, 2015 seeking a declaration that CME was not due coverage because of breach of warranty and other coverage defenses. Barth moved the Court to enjoin the Hong Kong arbitration because the insurers had not sought prior leave of the Court to commence arbitration naming the court-appointed receiver. Barth additionally requested an order enjoining all future litigation or arbitration, arguing that such an order was necessary to permit him to preserve CME's assets.

The Court granted Barth's motion to enjoin the arbitration on October 21, 2015 ("October 21 Order") (Dkt. No. 271) but denied the request for an anti-litigation injunction. The Court observed that if a binding agreement to arbitrate exists, the Federal Arbitration Act ("FAA"), 9 U.S.C. Section 1 et seq. and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. Section 201 et seq., would require the Court to grant leave to arbitrate if properly requested. The Court reasoned as follows:

The [FAA], 9 U.S.C. Sections 1–16, and the Convention, 9 U.S.C. Section 201, counsel in favor of resolving the dispute over CCME's insurance coverage through arbitration. The Convention mandates arbitration where (1) there is a written agreement; (2) arbitration is to take place in a Convention signatory; (3) the subject matter is commercial; and (4) one party is not a United States Citizen. *See Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.* 198 F.3d 88, 92 (2d Cir.1999). Each of the Convention's requirements are met here. For the Court to decide the insurance coverage dispute where a binding agreement to arbitrate exists would contradict the FAA's strong preference in favor of arbitration, particularly with regard to international arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 629, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

*McIntire v. China MediaExpress Holdings, Inc.*, 113 F.Supp.3d 769, 775–76 (S.D.N.Y.2015). In the October 21 Order, the Court ordered the Receiver to show cause why the Court should not grant the

Primary Insurers leave to file an arbitration in Hong Kong to determine coverage under the Primary Policy. To avoid duplicative resolution of claims, upon the filing of the instant Complaint on October 26, 2015, the Court entered an Order in that case reserving decision on whether to grant leave for the Primary Insurers to file arbitration "until the Court has had the opportunity to review the answer or motion to dismiss" in the instant action. *China MediaExpress Holdings*, 11 Civ. 804, Dkt. No. 277 (S.D.N.Y. November 24, 2015).

On October 29, 2015, CME, through its Receiver, reached a settlement with Starr under which Starr paid $1.65 million to settle insurance claims against it arising from the Securities Class Action. On December 16, 2015, CME, through its Receiver, reached a settlement with Torus under which Torus paid $1.65 million to settle insurance claims against it arising from the Securities Class Action. Accordingly, the Complaint was dismissed as to the Primary Insurers.

In the instant Complaint, the Receiver argues that Defendant Insurers' failure to fund CME's defense in the Securities Class Action and related matters, and its refusal to indemnify CME for judgments in those matters, constituted a breach of CME's contract for insurance coverage with the Defendant Insurers. The Receiver seeks damages for breach of contract as well as consequential damages sustained as a result of Defendant Insurers' failure to advance CME's defense costs and indemnify CME for the $535.5 million default judgment in the Securities Class Action, the $40 million arbitration award and the $49 million SEC penalty.

Defendant Insurers filed the Motions in lieu of answers, seeking to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. Defendant Insurers argue that the Receiver's claims are subject to the dispute resolution provisions in the Excess Policy and Second Excess Policy, both of which mandate mediation and arbitration in Hong Kong. According to Defendants, the Receiver's breach of contract claims fall within the plain language of the arbitration provisions and therefore must be mediated and potentially arbitrated. Defendants further argue that the Complaint should be dismissed on grounds of *forum non conveniens* grounds because the dispute resolution clauses in both policies specify Hong Kong as the proper forum.

## II. LEGAL ANALYSIS

### A. THE FEDERAL ARBITRATION ACT

█ The Federal Arbitration Act ("FAA") governs whether the Court must compel arbitration. *See* 9 U.S.C. § 2 ("A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable ...") "The FAA was enacted to promote the enforcement of privately entered agreements to arbitrate, 'according to their terms.'" *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir.1999) (*quoting Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)).

█ Well-established federal public policy strongly favors arbitration as an "alternative means of dispute resolution." *Chelsea Square Textiles*, 189 F.3d at 294 (describing FAA as evincing "a strong federal policy favoring arbitration"); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir.1987) (describing FAA as "a Congressional declaration of a liberal federal policy favoring arbitration agree-

ments" (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (quotation marks omitted))). Indeed, "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy [the United States Court of Appeals for the Second Circuit has] often and emphatically applied." *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir.2006) (quotation marks omitted). This policy "requires [the Court] to construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir.1995) (quotation marks omitted).

 That said, a party may only be required to submit to arbitration a dispute that it has agreed to arbitrate. *See Paine-Webber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir.1996) (*quoting AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)); *see also Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir.2002). Federal law "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). The FAA authorizes the Court to compel arbitration if the parties have entered into an agreement to arbitrate and one party refuses to honor that agreement. *See PaineWebber*, 81 F.3d at 1198; *Bimota SPA v. Rousseau*, 628 F.Supp.2d 500, 503–04 (S.D.N.Y.2009).

 As a threshold matter, it is clear that CME agreed to dispute resolution with the Defendant Insurers through mediation and arbitration. *See Genesco, Inc.*, 815 F.2d at 846 (looking to "whether there was an objective agreement with respect to the entire contract"). The Receiver maintains, though, that the claims ad-vanced in the Complaint lie outside the scope of the arbitration clauses in the Excess Policy and the Second Excess Policy. The Second Circuit has prescribed a two-step inquiry to determine whether a dispute falls within a particular arbitration clause:

> First, ... a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause," or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, "there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it."

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001) (citations omitted).

The Court finds that the arbitration clauses in the Excess Policy and the Second Excess Policy are broad. In the Second Circuit, the "narrow" arbitration clause is "something of an endangered species." *Benihana of Tokyo, LLC v. Benihana, Inc.*, 73 F.Supp.3d 238, 252 (S.D.N.Y.2014); *see also China Auto Care, LLC v. China Auto Care (Caymans)*, 859 F.Supp.2d 582, 586 (S.D.N.Y.2012) (observing that the class of arbitration clauses considered narrow is functionally "a class of one"). In arguing that the arbitration provisions in both policies are in fact narrow, the Receiver relies largely on a 1961 decision, *In re Kinoshita & Co.*, 287 F.2d 951 (2d Cir.1961), in which the Second Circuit held that the clause "[i]f any dis-

pute or difference should arise under this Charter," was narrow because "the clause restrict[ed] arbitration to disputes and controversies relating to the interpretation of the contract and matters of performance." *Id.* at 953.

Since that decision, the Second Circuit has repeatedly and expressly "confine[d] *Kinoshita* to its precise facts." *S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.,* 745 F.2d 190, 194 (2d Cir.1984). The Second Circuit has distinguished the phrases "arising from" and "arising out of" from the clause in *Kinoshita,* deeming arbitration clauses that include those phrases to be "broad" clauses. *See Louis Dreyfus Negoce, S.A., v. Blystad Shipping & Trading, Inc.,* 252 F.3d 218, 225-26 (2d Cir. 2001) ("To the extent a distinction exists between the present language of 'arising from' and Kinoshita's language of 'arising under', we believe the distinction is more than just a semantic one, and only the latter phrase limits arbitration to a literal interpretation or performance of the contract."). "*Kinoshita* must be confined to its 'precise facts'—that is, to the phrase 'arising under' or, at most, to 'its equivalente[.]' " *ACE Capital v. Central United Life Ins. Co.,* 307 F.3d 24, 33 (2d Cir.2002) (*quoting S.A. Mineracao,* 745 F.2d at 194); *see, e.g., Bristol–Myers Squibb Co. v. SR Int'l Bus. Ins. Co.,* 354 F.Supp.2d 499, 505 (S.D.N.Y.2005).

In this case, both arbitration clauses at issue are distinct from the *Kinoshita* clause. The Excess Policy dispute resolution provision states that any dispute "arising out of this Policy" shall be "referred to and determined and resolved by arbitration at HKIAC...." (Dkt. No. 6, Ex. B.) The phrase "arising out of" has been construed by the Second Circuit as "the paradigm of a broad clause." *Collins & Aikman Prods. Co.,* 58 F.3d at 20; *see also Clarendon Nat. Ins. Co. v. Lan,* 152 F.Supp.2d 506, 514 (S.D.N.Y.2001) (finding clauses containing the "standard term 'arising out of' are associated with broad arbitration clauses" and compelling arbitration).

The Second Excess Policy contains an endorsement providing that any dispute "regarding any aspect of the operation of this Policy" shall be "resolved by arbitration in the jurisdiction in Hong Kong." (Dkt. No. 6, Ex. C.) This clause does not contain the restrictive language that would indicate that it is intended as a narrow clause. Further, both policies follow form to the Primary Policy and thereby incorporate the operative arbitration clause in that policy, which provides that "... any disputes or disagreements which arise in connection with this Policy ... shall be resolved through final and binding arbitration." (Dkt. No. 6, Ex. A.) The use of the phrase "in connection with" denotes a broad arbitration clause. *See Oldroyd v. Elmira Sav. Bank,* 134 F.3d 72, 76 (2d Cir.1998). Accordingly, the arbitration clauses in both excess policies, as well as the Primary Policy, are distinguishable from the *Kinoshita* clause and are broad.

▬ Because the Court finds that the Arbitration Clause is broad, the "presumption of arbitrability" attaches, and CME bears the burden of showing that the arbitration clause "is not susceptible of an interpretation that it covers the asserted dispute." *Oldroyd,* 134 F.3d at 76. Where a contract contains a broad arbitration clause, only those claims that "present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement." *Collins & Aikman,* 58 F.3d at 23. In deciding whether a particular claim falls within the scope of the parties' arbitration agreement, courts look to the factual allegations in the complaint. *Genesco, Inc.,*

815 F.2d at 846. "If the allegations underlying the claims 'touch matters' covered by the parties' [contracts], then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (*quoting Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985)).

■■■ Here, the Court finds that the factual allegations supporting CME's claims are within the scope of the arbitration clauses, because they clearly touch matters covered by the Excess Policy and Second Excess Policy. CME specifically alleges that "Defendants' failure to advance CME's defense costs, failure to indemnify CME … and wrongful denials of coverage for CME's claims, without any basis, constituted breaches of their contractual obligations under their respective insurance policies." (Dkt. No. 6, ¶ 11.) The Complaint alleges that the Defendants adopted the coverage denials asserted by the Primary Insurers, who "had no intention of fulfilling their contractual obligations." (Dkt. No. 6, ¶ 64.)

The Receiver argues that CME's claims do not fall within the scope of the dispute resolution provisions in the Excess Policy and Second Excess Policy because they arise from CME's alleged pre-contract nondisclosures and therefore do not involve the "ongoing performance of the Policy." (*See* Dkt. No. 38 at 19.) Although the Receiver now reframes CME's cause of action as one implicating fraud in the inducement, the factual allegations in the Complaint tell a different story: the Complaint states that CME's insurers refused to defend and indemnify CME according to the insurance policies, after which CME's insurers defended their refusal by asserting CME's breach of contractual representations and pointing to applicable policy exclusions, including a provision excluding "any Claim … brought about or contributed by … the deliberately fraudulent or criminal acts of any Insureds." (Dkt. No. 6, Ex. A at 14.) Even if the Receiver's claims of fraudulent inducement were at issue, the FAA mandates that the arbitrator consider claims of fraud in the inducement. *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir.2012) (*quoting Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).

At each stage, CME's claims and the Defendant Insurers' defenses alike are expressly premised on a breach of the insurance policies, which define the coverage obligations of the insurers and the contractual duties of the insured. The claims involve the "construction of the contract" and "the parties' rights and obligations under it." *Collins & Aikman*, 58 F.3d at 23. It is not a close question as to whether CME's claims "touch matters" covered by the Excess Policy and Second Excess Policy. The claims go to the heart of the contract's terms and are therefore within the purview of the arbitration clauses in those policies.

## B. *CONVENTION ON RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS*

■■■ Because of the international character of the transactions underlying the Complaint, arbitration of this dispute is further compelled by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), which provides common standards for the recognition of arbitration agreements made in international commerce. The Convention is incorporated into the FAA. *See* 9 U.S.C. § 201 ("The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter."). The goal of the Convention is to "promote the

enforcement of arbitral agreements in contracts involving international commerce so as to facilitate international business transactions." *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 92 (2d Cir.1999). The adoption of the Convention by the United States promotes the strong federal policy favoring arbitration of disputes, particularly in the international context. *Id.* at 92.

■ In accordance with such policy, the Convention contemplates a "very limited inquiry by courts when considering a motion to compel arbitration." *Id.; see also Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186 (1st Cir.1982). As this Court stated in the October 21 Order, the Convention mandates arbitration where four factors are satisfied: (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) the agreement cannot be entirely domestic in scope. *See Smith/Enron,* 198 F.3d at 92.

■ Each of these factors is satisfied in this case, just as each was satisfied in the October 21 Order addressing the Primary Insurers' proposed anti-litigation order. First, the Excess Policy and Second Excess Policy both contain written agreements to arbitrate. The Excess Policy provides that, after attempts at mediation, any dispute "arising out of this Policy" between CME and American Home "shall be referred to and determined and resolved by arbitration at HKIAC." (Dkt. No. 6, Ex. B.) The Second Excess Policy provides that after mediation attempts, any dispute "regarding any aspect of the operation of this Policy" between CME and China Pacific "shall be resolved by arbitration in the jurisdiction in Hong Kong." (Dkt. No. 6, Ex. C.) Second, both policies provide for arbitration in Hong Kong, which is a signatory to the Conven-

tion. Third, the subject matter of both agreements to arbitrate are clearly commercial in nature. Finally, the contractual agreements at issue here are not "wholly domestic" in scope: they were formed in Hong Kong, issued by Hong Kong-based companies, and contemplate the application of Hong Kong law in dispute resolution proceedings.

The Convention provides that a court in a signatory state, considering an action "in a matter in respect of which the parties have made an agreement within the meaning of this article" must refer the parties to arbitration unless it finds that the arbitration agreement is "null and void, inoperative, or incapable of being performed." 21 U.S.T. 2517, Art. 11(3). The Receiver has not offered any evidence that the dispute resolution provisions in the Excess Policy and Second Excess Policy were null or inoperative, and the Court finds none. Although the Receiver argues that the Court's equitable powers over the receivership assets permit the Court to exercise control over any claims brought against those assets, the Receiver "stands in the shoes of" CME and may assert only those claims which CME could have asserted. *Eberhard v. Marcu,* 530 F.3d 122, 132 (2d Cir.2008). Because CME is bound by the arbitration agreements in the insurance policies, the Receiver, too, is limited to those contracted-upon forms of dispute resolution.

The Court finds that the Receiver has offered no new information that would compel a finding regarding the applicability of the Convention different from that made in the October 21 Order. Accordingly, the Court is persuaded that under the FAA and the Convention, the dispute resolution clauses contained in the Excess Policy and the Second Excess Policy require

the arbitration of CME's dispute with Defendant Insurers.[4]

### D. *DISMISSAL OF THE ACTION*

██ Both American Home and the Second Excess Insurers request that the Court dismiss, not stay, CME's claims pending arbitration. The FAA directs the district court, "on application of one of the parties," to enter a stay in a case where the asserted claims are "referable to arbitration." 9 U.S.C. § 3. Until recently, courts in this District have dismissed an action rather than stay proceedings "[w]here all of the issues raised in the Complaint must be submitted to arbitration." *Rubin v. Sona Int'l Corp.*, 457 F.Supp.2d 191, 198 (S.D.N.Y.2006) (collecting cases). However, the Second Circuit recently held that "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir.), *cert. denied*, ── U.S. ──, 136 S.Ct. 596, 193 L.Ed.2d 471 (2015). The Receiver has not requested a stay here. Regardless, a stay will permit prompt arbitral resolution of CME's claim and permit the parties "to proceed to arbitration directly, unencumbered by the uncertainty and expense of additional litigation should judicial participation … prove necessary." *Moton v. Maplebear Inc.*, No. 15 Civ. 8879, 2016 WL 616343, at *9 (S.D.N.Y. Feb. 9, 2016); *see also Begonja v. Vornado Realty Trust*, No. 15 Civ. 4665, 159 F.Supp.3d 402, 414–15, 2016 WL 356090, at *9 (S.D.N.Y. Jan. 29, 2016); *Merrick v. UnitedHealth Grp. Inc.*, 127 F.Supp.3d 138, 154 (S.D.N.Y.2015)

(finding that even where no party requested a stay, *Katz* mandated a stay in lieu of dismissal).

The Court has determined that all of CME's claims must be submitted to arbitration. Pursuant to the Second Circuit's decision in *Katz*, the Court will stay CME's claims pending arbitration.

### III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 23) of defendant American Home Assurance Company to compel arbitration is GRANTED; and it is further

**ORDERED** that the motion (Dkt. No. 30) of defendants China Pacific Insurance Co. (H.K.), Ltd. and China Ping An Insurance (Hong Kong) Co. Ltd. to compel arbitration is GRANTED; and it is further

**ORDERED** that all claims brought by plaintiff China MediaExpress Holdings, Inc. are stayed against all defendants pending arbitration; and it is further

**ORDERED** that leave is granted to defendants American Home Assurance Company, China Pacific Insurance Co. (H.K.), Ltd., and China Ping An Insurance (Hong Kong) Co. Ltd. to file arbitration in Hong Kong against China MediaExpress Holdings, Inc. by and through Court-appointed Receiver Karl Barth to determine coverage under any applicable insurance policies.

**SO ORDERED.**

---

4. American Home argues additionally that the Complaint should be dismissed on grounds of *forum non conveniens* in light of the First Excess Policy's clause naming Hong Kong as the forum for dispute resolution. The Court finds that the arbitration agreement must be enforced in its entirety, and therefore the Court need not address the merits of the *forum non conveniens* argument here because all claims potentially giving rise to litigation will be addressed through mediation or arbitration.